Kalter, Appellant, v. Philadelphia Rapid Transit Company.

Argued October 5, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Harold B. Borneman,* and with him *Wm. A. Gray,* for appellant.

*Daniel J. Shern,* and with him *John J. K. Caskie,* for appellee.

Opinion by Cunningham, J., December 13, 1928:

Appellant was the plaintiff in an action of trespass and now appeals from an order setting aside a verdict in his favor for $2,000 and entering judgment for the defendant upon the whole record. In a right angle collision between one of defendant's trolley cars and appellant's automobile at the intersection of Stiles and Sixteenth Streets in the City of Philadelphia, appellant suffered serious personal injuries and his automobile was damaged. The negligence charged was excessive speed of the trolley car. Defendant offered no testimony, but submitted a point for binding instructions based upon the alleged contributory negligence of appellant. There was evidence that the trolley car was running at a rate of forty-five miles per hour, and, for the purposes of this appeal, we assume the negligence of defendant's motorman.

Stiles Street, 20 feet from curb to curb, runs east and west and has no trolley tracks. Sixteenth Street runs north and south, with a descending grade toward Stiles; is 26 feet between curbs, with sidewalks 12 feet wide; has a single trolley track of defendant upon which its cars run northwardly; and the cartway on either side of the track is 10.41 feet in width. The next east and west street south of Stiles is Flora and the distance from the south curb of Stiles to the north curb of Flora is 118 feet. The accident happened on a clear morning and at the time there were only three vehicles—appellant's automobile, defendant's trolley car and a horse-drawn ice wagon—in the immediate vicinity of the intersection. Appellant was driving east in the middle of Stiles Street, intending to cross Sixteenth, and the trolley car was coming north on that street. In his direct examination he gave this version of the accident: "Well, I drove the car, and when I got to Sixteenth and Stiles I blowed my horn and looked, and I slackened down. There was a wagon of some kind—I don't know whether it

was an ice wagon or a newspaper wagon—a horse and wagon was going south on Sixteenth Street, and the wagon was right in the middle of the tracks; so when I got to the middle of the track I slackened down to let the horse and wagon go by, and as the horse pulled up I managed to cross Sixteenth Street, and before I had a chance to see what was what, why, my machine was smashed; the machine was completely turned around and I remained unconscious." After stating that when he looked the trolley car "must have been about 100 feet away" his testimony continues: "Q. Now, where was the trolley car when you first saw it? A. When I first saw the trolley car it must have been about leaving Flora Street, which is a little street above Girard Avenue. ...... Q. And where was your automobile at that time? A. On 16th Street. Q. Well, whereabouts on 16th Street in relation— A. In the middle of 16th Street—in the middle of the track. I was going by as he pulled down, as the horse went south, see? I crossed 16th Street slowly."

Upon the important questions of where appellant first looked for trolley cars which might be using the track and whether he complied with the legal requirement resting upon every traveler about to cross street railway tracks, his testimony on cross-examination differed radically from that given by him on direct. On cross-examination he repeated his statement on direct that he saw the trolley car when he was in the "middle of the track." Reference was then made to the house line and he was asked whether he looked at that point. The questions and his answers read: "Q. Please pay attention to my question and we will get along very rapidly. When you looked at the house line, where did you see the trolley car? A. I saw the trolley car on 16th Street. Q. Whereabouts on 16th Street? A. Say about 90 or 100 feet. ...... Q. And the car was running at that time? A. The car was coming; yes, sir. Q. Now, that was just when you

could see around the house line down, wasn't it? A. Yes. Q. Just when you reached the house line—and then when did you look again? A. I didn't get a chance to look any more. Q. You didn't get a chance to look any more? A. No, sir.''

We therefore have the appellant testifying in his direct examination that when he first looked for a trolley car he was "in the middle of the track" and then saw the car "about 100 feet away ...... about leaving Flora Street"; on his cross-examination he makes the entirely different statement that he first looked at the house line at the southwest corner of the streets (approximately 22 feet from the western rail of the track) and then saw the approaching trolley car "about 90 or 100 feet" away and that he "did not get a chance to look any more." The driver of the ice wagon, called by appellant, testified that he was not driving on the track but on the cartway on the western side of Sixteenth Street; that appellant let the witness pass in front of him; and that the trolley was approaching so rapidly the witness anticipated an accident and stopped just south of Stiles Street.

Another witness for appellant was a passenger on the trolley car and testified that when it was passing Flora Street and approaching Stiles at a rate of forty-five miles per hour, he saw the ice wagon just south of Stiles and appellant's automobile beyond the wagon moving toward the track and with the front of the automobile about five feet from the western rail. Appellant's automobile was struck on the right rear and carried along about forty feet by the trolley. Appellant's duty, under such circumstances, has been frequently and clearly defined by our courts. By reason of the numerous accidents of this kind occurring under existing traffic conditions it may not be amiss to emphasize again the measure of the duty of persons intending to cross trolley tracks at street intersections.. In Smathers v. Pittsburgh and Butler

Street Railway Company, 226 Pa. 212, 215, Mr. Justice ELKIN referred to several previous decisions and said: "What was really decided in these cases and in the long line of cases which follows was that it is the absolute duty of a traveler or the driver of a team at the intersection of two city streets upon which is laid a line of street railway to look immediately before going upon the tracks, and failure to do so is negligence per se. If when he looks he sees an approaching car so near as to make an attempt to cross dangerous, it is his duty to stop; or, if when he looks at the edge of the tracks his view is obstructed so that he cannot see it then becomes his duty to listen, and under some circumstances it may be his duty to stop as if when he looks and listens he still is in doubt about the location and movement of the car. If in any of these situations he fails in the performance of the duty required he is guilty of contributory negligence and cannot recover. The one positive and imperative duty always required under such circumstances is to look when the tracks are reached and immediately before attempting the crossing. Failure to perform this absolute duty will defeat a recovery under the authority of all our cases. In such a case no question can arise as to the proper place to look or whether there is a better place as in steam railroad grade crossing cases, because the settled rule is that the place to look is immediately before going upon the tracks. What the driver of a team is required to do after looking depends upon what he sees when he looks. Whether he failed to perform his duty under the circumstances is sometimes a question of law for the court and sometimes of fact for the jury. If when he looks he sees a car so near as to make the attempt to cross dangerous. and notwithstanding he attempts the crossing and a collision results he is so clearly guilty of contributory negligence that the court should say so as a matter of

law. He can take no close chance except at his peril. If, however, when he looks he sees a car so far distant that in the exercise of ordinary prudent judgment he is justified in concluding that he can safely make the crossing and attempts to do so, it is for the jury to determine whether under the circumstances he should have stopped before attempting to drive over the tracks." Under any view of appellant's testimony he did not look "immediately before attempting the crossing." If his statement on direct examination be accepted he did not look until he "was in the middle of the track" and, if we accept his equally positive testimony on cross-examination, he looked at the house line and saw the trolley car approaching but did not look again before driving on the track. The passing of the ice wagon in front of appellant and between him and 'the trolley car was a factor in the situation which made the strictest observance of the rule all the more imperative. His statement "before I had a chance to see what was what, why my machine was smashed" is significant and is some indication of the manner in which he must have driven on the track from behind the ice wagon.

It is earnestly argued in behalf of appellant that, as he was not required to disprove contributory negligence but only to make out a case clear of it, his conflicting statements were for the jury. This however is not a case of conflicting statements by a plaintiff, under one of which he would be free, and under the other guilty, of contributory negligence (Ely v. Railway, 158 Pa. 233, 238; Whitman v. Stipp, 270 Pa. 401, 407; and Wolf v. Spencer, 282 Pa. 425), but a case in which, under either of his statements, he failed to look at the point where it was his legal duty to look and where, if he had looked, he would have seen the trolley car less than 100 feet away and approaching, under the testimony of his witnesses, at a rate of speed exceeding fifty feet per second. Considering

all the testimony in the light most favorable to appellant and giving him the benefit of every reasonable inference therefrom, we are of opinion that the trial judge would have been justified in affirming appellee's point for binding instructions upon the ground that appellant was guilty of contributory negligence as a matter of law.

The assignments of error relate solely to the subsequent entering of judgment for defendant n. o. v. and they are accordingly dismissed.

Judgment affirmed.