## Godshall v. Dietrich. Dietrich v. Godshall.

*Paul D. Edelman* and *Wellington M. Bertolet,* for Godshall.

*George W. Manderbach* and *George Eves,* for Dietrich.

SCHAEFFER, P. J., Nov. 4, 1929.—These cross-suits have been brought as the result of the collision of two automobiles at a street intersection. The cases were tried together before the same jury, which returned a verdict for Godshall, the plaintiff, for $600, in the first case, and for Godshall, the defendant, in the other case.

About 6.30 A. M., on March 12, 1927, Godshall, in a Whippet car, was driving eastward on Windsor Street, in the City of Reading, and Mrs. Dietrich was going north on Fourth Street. The cars collided at the intersection of these streets. Both streets are about thirty-three feet between curbs, are paved and have a single line of trolley tracks in the centre. According to the

testimony most favorable to Godshall, he was upon his right-hand side of the street, going at a speed of eighteen to twenty miles per hour, and when he was fifteen or twenty feet from the western curb-line of Fourth Street, or, in other words, about at the western building-line of that street, he looked to his right and saw the Dietrich car 100 to 110 feet south of Windsor Street on Fourth Street coming northward at a speed of thirty to thirty-five miles an hour; he, Godshall, did not look to his right again or again see the Dietrich car until the instant of collision, although he says it did not slacken its speed, and that his car was struck on its right side by the front of the Dietrich car after he had gotten four feet beyond the east rail of the Fourth Street trolley line; that he, Godshall, had maintained his same speed, although he could have stopped in four to six feet, and that his car came to rest upon the northern sidewalk of Windsor Street east of Fourth, and the Dietrich car stood in the middle of the intersection. Godshall testified that he had gone fifteen to eighteen feet into Fourth Street when he was hit at his right rear door.

As the Dietrich car was upon Godshall's right, the former had the right of way at the intersection, and the latter was bound to give way to the former, unless Godshall were so far in advance of the other as to afford reasonable time to clear the crossing and thus, in all probability, avoid a collision: Weber v. Greenebaum, 270 Pa. 382, 385. When Godshall arrived at the intersection, the Buick was, he says, 100 to 110 feet away, approaching at a speed of thirty to thirty-five miles per hour. Without looking again, Godshall proceeded at a continued speed of eighteen to twenty miles an hour to cross and had gone about thirty-six feet (being four feet beyond the east rail of the trolley tracks, the centre of which was in the middle of the sixty feet wide street), when he was struck by the Buick. Mathematically, it must appear that the elapsed interval between the time when Godshall says he saw the Buick 100 to 110 feet away and the time he was struck was less than one and one-half seconds. But at thirty-five miles per hour the Buick traveled in that time only about eighty-five feet. As the point of the collision was about the centre of Windsor Street, about sixteen feet north of the south curb of that street, the Buick would have been at least thirty feet from the Godshall car when the latter passed, if we strictly apply Godshall's testimony that the speed of the Buick remained unchanged. And yet the Buick came to a stop "right in the intersection—in the middle of the intersection," as Godshall says, practically at the point of collision. It is obviously impossible to reconcile the short distance the Buick traveled after the collision with the speed assigned to it by Godshall at the time of the collision, and it is equally impossible to reconcile the speeds and positions of the two cars as fixed by Godshall with the established fact of a collision. By the mathematical test and by the position of cars after the collision, it thus appears that the testimony of Godshall is so untrustworthy as to be insufficient to support the verdict. Either he was further away from the intersection when the Dietrich car was 100 to 110 feet therefrom or the speeds of the cars were widely different from that which he gives to them, or else when he testifies to the position of the Dietrich car he is describing something he did not see. In order that the Dietrich car could travel 100 feet and half of Windsor Street in a second and a half, it would have had to have a speed of about fifty miles per hour; yet it stopped before reaching the northern curb-line of Windsor Street—a physical impossibility at that speed. In the face of these facts the verdict cannot be upheld: Bornscheuer v. Consolidated Traction Co., 198 Pa. 332. See, also, Lessig v. Reading Transit and Light Co., 270 Pa. 299.

Again, Godshall must be held to have been guilty of contributory negligence. It is true that, according to his testimony, he reached the intersection first, but as he was upon the left of the other car which he saw and knew was also approaching the intersection, it was his duty to use reasonable care under the circumstances to avoid a collision. This duty threw upon him the obligation of watching the other car and regulating his progress in accordance therewith. He says he could have stopped within six feet; yet without change of speed and without again looking, he traveled at least thirty-six feet and was struck. When he saw the other car approaching at a rapid rate of speed he could not blindly proceed upon the unfounded belief that he could safely cross ahead of the other car, but he was bound to pay such attention to the progress of the other car as would apprise him of danger and enable him to stop before a collision occurred. He cannot be said to have discharged his duty of reasonable care by a hasty glance followed by a blind assumption that he could pass in safety. Obviously, he either was negligent in proceeding without again looking or he assumed the risk of the situation: Kalter v. Phila. R. T. Co., 95 Pa. Superior Ct. 116; Frank et al. v. Pleet et al., 87 Pa. Superior Ct. 494, 497. As in Why v. Stratton, 92 Pa. Superior Ct. 476, the plaintiff, Godshall, drove his car to the place of danger with knowledge that an oncoming car would arrive at the intersection of the lines of travel at about the same time. We think that the defendant's motion for a non-suit should have been allowed.

In the case of Dietrich v. Godshall, the verdict having been for the defendant, the plaintiff has moved for a new trial upon the ground that the verdict was against the weight of the evidence. Mrs. Dietrich stated that the speed of her car was fifteen to twenty miles as she came up Fourth Street and that she reduced that speed to twelve to eighteen miles per hour at the intersection; that she looked right and then left when her wheels were at the south curb-line of Windsor Street and that she saw the Godshall car coming east thirty to fifty feet west of the west curb-line of Fourth Street; that she sounded her horn, put on her brakes, gave her car a turn to the right, eastward on Windsor Street, and was struck by the right rear door of the Godshall car coming into contact with the left front fender of her car; and that her car came to a stop with her left front wheel between the rails of the Windsor Street car track. Mrs. Sweigart, who was riding with Mrs. Dietrich, testified that the speed of the Dietrich car on entering the intersection was fifteen miles per hour, and in other matters substantially corroborates Mrs. Dietrich. A pedestrian, who was at the northeast corner of Fourth and Windsor Streets, saw the Dietrich car approach and had her attention attracted by the speed of the Godshall car. Another witness fixed the speed of the Godshall car, when about 100 to 150 feet from Fourth Street, at thirty to thirty-five miles per hour. As against this we have the testimony of Mr. Godshall, above referred to, and that of two witnesses who testified, not as to the happening of the accident but as to the position of the cars after the accident. Now, although the preponderance of the testimony does not depend solely upon the number of witnesses, it does appear to us that the weight of the evidence is in favor of the plaintiff in this case. The testimony does raise an issue which is for the jury and not for the court, but we believe this is a case in which the plaintiff has a just claim to have her cause submitted to another jury.

And now, to wit, Nov. 4, 1929, in the case of Godshall v. Dietrich, the rule for a new trial is discharged and the rule for judgment n. o. v. is made absolute; and in the case of Dietrich v. Godshall the rule for a new trial is made absolute.　　　　　　　　　　　　　　　From Charles K. Derr, Reading, Pa.