# Frances *v.* Monongahela Railway Company, Appellant.

*Negligence—Railway crossing—Automobile—Collision—Failure to
stop, look and listen—Damages caused by removing car after acci-
dent—Proximate cause.*

In an action of trespass to recover damages to an automobile
arising out of a collision at a railway crossing, the evidence estab-
lished that plaintiff neither stopped, looked nor listened, as he ap-
proached the crossing.  The evidence disclosed that plaintiff, when
a few feet from the crossing, to avoid a collision, turned parallel
with the tracks on to the right of way of the defendant where his
car was struck by the locomotive and wedged between a bank and
the engine.  The train crew, with the assistance of others, made
an unsuccessful attempt to extricate the car and upon proceeding
forward the locomotive caused further damages for which plaintiff
sought to recover.

Under such circumstances the proximate cause of the additional
damage was the original negligence of plaintiff in failing to stop,
look and listen, and a judgment for the plaintiff will be reversed.

In such case, although the car might have been removed with-
out additional damage if proper appliances had been obtained, the
train crew was not bound to wait and obstruct traffic indefinitely.
Also, the determination of the question as to whether less damage
would have been done if the train had been backed instead of pro-

ceeding forward involved an exercise of judgment on the part of defendant's employees for which defendant is not liable.

*Damages—Measure of—Burden of proof.*

In a claim for pecuniary damages to property in a negligence case the evidence must fix the actual loss with reasonable precision through witnesses with knowledge of the fact. This burden is always upon the complaining party. Damages are never presumed; the plaintiff must establish by evidence such facts as will furnish a basis for their assumption according to some definite and legal rule.

Argued April 20, 1927. Appeal No. 202, April T., 1927, by defendant from judgment of C. P. Fayette County, June T., 1924, No. 264, in the case of Lewis Frances v. Monongahela Railway Company. Before PORTER, P. J. HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Trespass to recover for damages to an automobile. Before HUDSON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $700 and judgment thereon. Defendant appealed.

*Errors assigned,* among others were the charge of the court and refusal of defendant's motion for judgment non obstante veredicto.

*Dean A. Sturgis* of *Sturgis and Sturgis,* for appellant, cited: Atlantic Refining Company v. New York, Chicago and St. Louis Railroad Company, 67 Pa. Superior Ct. 320; Serfas v. Lehigh and New England Railroad Company, 270 Pa. 306; Bunting v. Hogsett, 139 Pa. 363.

*A. L. Byrne,* for appellee, cited: Herr v. Lebanon Valley R. R., 149 Pa. 225; Brown v. Lynn, 31 Pa. 510; Jones v. American Can Co., 242 Pa. 611.

OPINION BY PORTER, P. J., December 14, 1927:

The plaintiff in his statement of the cause of action averred that a Ford car which he owned was being driven by his employe over a grade crossing of the track of the defendant company when a train operated by the employes of the defendant company collided with the said automobile, slightly damaging same; that before any material damage was done to said automobile the train was brought to a stop and the automobile (hereinafter designated as the car) inspected by the driver; and the driver requested the train crew to assist him in removing the car from the tracks; that the employes of the defendant company refused such assistance, and thereupon, in a careless and negligent manner, and with a total disregard for the property of said plaintiff, caused the train to again collide with the said automobile and entirely destroy the same. The plaintiff recovered a verdict and judgment in the court below and the defendant appeals.

The evidence produced by the plaintiff clearly established that the driver of his car neither stopped, looked nor listened as he approached the grade crossing. An engine of the defendant company moving eastward, with the tender in front, was approaching the crossing from the west. The driver does not appear to have looked in that direction until his car was about three or four feet from the track, at which point he saw the tender of the locomotive appear in the crossing; he did not have his car under such control as to stop there and in his testimony thus explains what he did: "Q. And in order to avoid running into it head-long, you turned your car and ran parallel with it to the right? A. Yes, sir." He thus drove to the right, eastward and when the front part of his car had passed from the public highway on to the right of way of defendant company the tender of the locomotive struck the left side of the car near the front door; the car was whirled round so that the front end of it was

pushed into the bank and the rear of it was wedged against the drive wheels of the engine; it was wedged in between the bank and the engine. The locomotive had been moving slowly and was stopped when the plaintiff's car was in the position above indicated, the front of the car being against the bank and the back of it against the locomotive; the left rear wheel being crushed and that corner of the car lifted from the ground eighteen inches or two feet, resting upon the drive rod connecting the wheels of the locomotive. The driver and the passengers who were in the car then got out of the car and had suffered no injuries to their persons. The testimony of the driver directly contradicted the averment of plaintiff's statement that the employes of the defendant company had refused to assist in the attempt to remove the car from its position. His testimony on this point was to the effect: "Q. Well, now, after these men in the automobile and the train crew came, what did you do? A. Why, we were going to lift the car to one side. Q. Who were going to lift it? A. Myself and some of the men that were standing around, and the train crew. Q. All right. A. And it seemed to be stuck, or something. Q. Well, did you make any effort to move the car? A. Yes, sir, when it was stuck why I went to hunt for a pry or something to pry it loose." This witness did not testify that he had notified the train crew that he was going to get a pry or anything to be of assistance in removing the car from the position in which it was wedged between the engine and the bank. There was no evidence from which a jury should have been permitted to infer that those operating the locomotive had been guilty of any negligence as they approached the grade crossing.

The learned counsel for the appellee speaks in his paper book of two collisions. It is conceded on behalf of appellee that there could be no recovery for the damages resulting from what is called the first

collision.   The contention on behalf of plaintiff is that
the damages resulting from what is called the first
collision were trifling, and that after the locomotive
had come to a stop and the car of the plaintiff, being
then only slightly damaged, was wedged in between the
bank and the locomotive, it was the duty of those oper-
ating the locomotive to keep it standing upon the track
and wait until the driver obtained some means for re-
moving the car when it had been found that the men
could not lift it with their hands.   It is further con-
tended that if the locomotive had been moved west-
wardly, instead of eastwardly, the pressure upon the
automobile would have been relieved and it could then
have been removed in such a manner as to prevent
further damage.   We have carefully studied the evi-
dence and find nothing upon which to base the sugges-
tion that there were two collisions.   The first collision,
which resulted exclusively from the negligence of
plaintiff's driver, knocked the plaintiff's car from the
track, dragged it some distance and when the locomo-
tive was stopped the tender and part of the locomotive
had passed beyond the car and the back of the car was
in some way entangled with the driving rod or driving
wheels of the locomotive.   This was all the result of
one collision and left the car in actual contact with the
locomotive.   The evidence clearly establishes that the
train crew kept the locomotive standing there ten or
fifteen minute's and it is to be kept in mind that loco-
motives and trains cannot be kept standing indefinite-
ly, thus suspending public transportation.   The testi-
mony produced by the plaintiff established that the
train crew made an effort to lift the car of the plaintiff
out of the way and they, with the assistance of others,
were unable to move it.   They were not bound to wait
indefinitely the return of the driver with something
which might possibly aid in removing the car.   The
negligence of plaintiff's employe was the natural,
primary, and proximate cause of the entire occurrence.

The collision naturally involved the probability of the car becoming entangled with the locomotive in such a manner that it would be difficult to remove it and that further damage to the car was likely to follow. The inquiry must always be, whether there was any intermediate cause, disconnected with the primary fault and self-operating, which produced the injury: Bunting v. Hogsett, 139 Pa. 363. The rule to stop, look and listen, is not a rule of evidence but a rule of law, peremptory, absolute and unbending; and it cannot be ignored, evaded, or pared away by distinctions and exceptions: Atlantic Refining Co. v. N. Y. C. & St. L. R. R. Co., 67 Pa. Superior Ct. 320.

When the driver drove the car from the public highway on to the right of way of the defendant company he became a trespasser and the railroad would only be liable for damages wantonly and wilfully inflicted. When the tender and part of the locomotive had already passed the car before being brought to a full stop, it may be possible that less damage would have been done the car had the locomotive and tender moved back westwardly, instead of proceeding eastwardly, the direction in which they had been previously going, but the determination of that question would involve an exercise of judgment upon the part of the employes of the railroad company and for a mere mistake in judgment their employer would not be liable. The point submitted by the defendant requesting binding instructions ought to have been affirmed.

It being conceded by the plaintiff that there could be no recovery for any damage to the car resulting from the accident prior to the removal of the locomotive in the easterly direction, after it had been brought to a full stop, the burden was upon the plaintiff to produce evidence establishing the value of the car after what is called the first collision. The evidence as to the condition of the car after it had been struck by both the locomotive and tender and wedged into the

bank by the side of the right of way was most unsatisfactory. The driver, when interrogated on that point, testified: "Q. Did you examine the car after the first collision? A. Not a thorough examination, but I looked at it. Q. What was the damage that you noticed when you first looked at the car? A. Why, there was one back wheel broke, and a dinge in the body." All the other witnesses who testified concerning this point, on behalf of the plaintiff, made only the same sort of examination. With such an examination they could only guess at the extent to which the car was actually damaged. The accident occurred after dark and those witnesses were simply guessing at the extent of the damage to the car resulting from the collision. The witness, Kearns, who was called by plaintiff to place an estimate on the damages to the car, testified as to what it would cost to repair those parts which the witnesses who had made merely superficial examinations of the car had observed, and testified that to repair those parts would cost only $55.00. When this witness was asked the direct question what was the fair market value of that car when it was wedged between the locomotive and the bank, with the left hand corner two feet off the ground and the front part of it against the bank, his answer disclosed that he was unwilling to make an estimate. "Q. What would you say was a fair market value of the car immediately after the first collision? A. Well, in the way it was setting, it would be pretty hard to tell just exactly. You couldn't get a man to buy a car that was all jammed up like that one was, and give you any price on it at all, I wouldn't imagine." And, in cross-examination: "Q. You don't know, do you? You don't know what the fair market value was; you don't know what you could have got on the open market for that car right after that collision took place, do you? A. No, not just exactly." When the claim is for pecuniary damage to property of the character involved in this case, the

evidence must fix the actual loss with reasonable precision, through witnesses with knowledge of the fact. This burden is always upon the complaining party. Damages are never presumed; the plaintiff must establish by evidence such facts as will furnish a basis for their assumption according to some definite and legal rule: Forrest v. Buchanan, 203 Pa. 454; Beck v. Baltimore & Ohio R. R. Co., 233 Pa. 344. The jury were in this case really permitted to guess at the difference between the market value of the car after it had been struck, the front of it pushed up against the bank and the left hand rear wheel lifted from the ground two feet, and the market value of the car after the locomotive had been moved away eastwardly. All the assignments of error are sustained.

The judgment is reversed and is here entered in favor of the defendant.