Smith, Jr. et ux. *v.* Blafkin, Appellant.

Argued October 23, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Samuel Melnick,* for appellants.

*W. Logan MacCoy,* of *MacCoy, Evans, Hutchinson & Lewis,* for appellees.

OPINION BY CUNNINGHAM, J., March 1, 1929:

Plaintiffs, husband and wife, brought their action in the court below to recover damages for personal

injuries suffered by the wife, and for losses sustained by the husband, as the result of a right-angle collision at the intersection of Righter's Ferry and Clwyd Roads on November 23, 1926, between an automobile, owned by the husband and driven by his wife, and a Ford truck, belonging to Blafkin Brothers. By agreement of the parties the case was tried before a judge without a jury and resulted in findings in favor of the wife for $250 and of the husband for $239.33. It is evident that the learned trial judge awarded the husband $124.38 as the cost of repairs; $44.95 for a new tire and tube; and $70 for the medical services rendered his wife. Exceptions to the findings having been overruled, judgments were entered thereon and these appeals, which will be disposed of in one opinion, were taken.

It was admitted that the truck was owned by Reubin Blafkin and his brother, Harry, conducting a tailoring business, as partners, under the firm name of Blafkin Brothers, and was used by them to collect and deliver clothing for customers, and that the driver at the time of the accident, a nineteen-year-old boy by the name of Jack Carusach, was in their employ as a helper; but it was denied that he was then driving the truck at their direction, or by their permission, or in the transaction of their business. Counsel for appellants state that these questions are involved upon this appeal: (a) may the claim of the husband for injuries to his automobile properly be joined with the claim of the wife for her personal injuries; (b) was the agency of the driver of the truck sufficiently established; (c) was the wife guilty of contributory negligence; and (d) did plaintiffs produce sufficient evidence of the extent of the damages to the car and of the reasonableness of the cost of the repairs to sustain the finding in favor of the husband upon this item?

The first proposition is ruled against appellants

in Hug v. Hall, 79 Pa. Superior Ct. 392. On the second question the defendants contended that the young man who was driving the truck, and was its sole occupant at the time of the collision, had been employed as a helper to go with and assist them in collecting and delivering clothing, but had never been directed or even permitted to drive the truck himself. He left their employ immediately after the accident and was not available as a witness. Disinterested witnesses testified that they had frequently seen him, both before and after the accident, in charge of and driving the truck alone while delivering and collecting clothing. There was, therefore, evidence to support the conclusion of the trial judge that at the time of the accident the truck was driven by the defendants' employe and that he was then engaged upon their business.

The question of the contributory negligence of the wife is more serious. She was driving the car east on Righter's Ferry Road, twenty-four feet in width, with a friend and a small child in the rear seat. Clwyd Road, thirty feet wide and running north and south, intersects Righter's Ferry Road at right angles. Another automobile, occupied by one of the witnesses, was headed east and parked along the south side of Righter's Ferry Road about forty feet east of Clwyd Road. Mrs. Smith was driving at a rate of about fifteen miles an hour when she reached the intersection. Her version of the accident reads: "Q. As you came to the near side of Clwyd Road, what did you do? A. I blew my horn two or three times. Q. Then what did you do? A. I slowed up. I looked left and right and not seeing any cars coming I went on. Q. Now, just tell us in your own words what happened. How far did you go? A. I had gotten almost over and slowed up, ready to stop, and I was struck. Q. Why were you slowing up, ready to stop? A. Because there was another car going east and had stopped

[the parked car]. Q. You mean, ahead of you? A. Yes. By the Court: ...... Q. The truck that hit you—from which direction did it come? A. From the right, going north. Q. You looked south in that direction before you crossed. How far down could you see? A. I could see pretty far down. ...... Q. How far could you see, a city block, two city blocks? A. I could see about a block and a half. Q. Could you see about three or four hundred feet? A. Yes. Q. And there was nothing there? A. No, I did not see anything. By Mr. MacCoy: ...... Q. Where was your car at this time with relation to Clwyd Road? A. It was almost over. Q. How much of your car was still in Clwyd Road? A. About two or three feet. Q. Which side were you driving on? A. The right. Q. What part of your car was struck? A. The rear. Q. What rear? A. The rear fender. ...... Q. Now, when this car struck you, Mrs. Smith, just tell what happened? A. Well, I did not see the car until just before it struck me. It hit me so hard, almost turned my car over, shattered the glass, and cut Mrs. Burritt's eyelids and dislocated my shoulder. Q. Mrs. Burritt was in the car with you? A. Yes.''

In another part of her testimony Mrs. Smith testified that she slowed down as she approached, and was about to cross, Clwyd Road because, in addition to the parked car to which we have referred, there was a car coming west on Righter's Ferry Road and at that time was so close to the parked car that she could not continue east until the approaching car had passed the standing car. The negligence of the driver of the truck is clear; the testimony shows that he approached this intersection at a speed of from forty to forty-five miles an hour and struck the right rear of the Smith car, although it extended only two or three feet into Clwyd Road. There were no other cars at the intersection to prevent the driver of the truck from driving to his left and passing behind the Smith

car. There was testimony by a Mrs. Preston, who was sitting in the parked car and had an unobstructed view of the accident, that as Mrs. Smith was crossing Clwyd Road the witness saw the truck coming rapidly north on that road, at a distance below Righter's Ferry Road which she described once as "perhaps half a block," again, as "about a square," and also as "50 or 60 feet, I imagine, around that." This witness stated that she saw the truck hit the Smith car as it "was stopping slowly," with the rear extending into Clwyd Road "about three feet." The truck struck the car with such force that it was driven up on the southeast corner of the intersecting roads and the truck was deflected from its course and overturned at the northwest corner. There was testimony that Harry Blafkin and Jack Carusach had ridden in the truck to the home of a customer living on Llanberris Road, and that Blafkin went into this house. The exact location of Llanberris Road with reference to Righter's Ferry Road does not appear in the testimony, but if resort be had to an official map it will be found that it is the second street south of and parallel to Righter's Ferry Road and that the distance between these roads along Clwyd Road is about eight hundred feet. There was also evidence that the houses along the west side of Clwyd Road south of Righter's Ferry are set back fifty feet. The husband plaintiff testified that anyone driving his car would, at the house line, have a view south on Clwyd Road from three hundred to four hundred feet. If we accept Mrs. Smith's testimony relative to the speed at which she was driving, fifteen miles an hour, or about twenty-two feet per second, it would take her four seconds to travel from the house line to the east side of Clwyd Road, where the collision occurred. If the truck was traveling at the rate of forty miles an hour, or about fifty-eight feet per second, it would travel two hundred and thirty-two feet in the same length of time. It is

therefore quite possible that the truck was not within the distance which an ordinarily prudent person would be bound to look down Clwyd Road before attempting to cross it. This is not a case of a driver seeing a car approaching from the right upon an intersecting street and undertaking to cross in front of it, but a case of a driver looking to her right at the intersection for approaching vehicles and seeing none.

The facts of this case distinguish it from Frank v. Pleet, 87 Pa. Superior Ct. 494; and kindred cases cited by the appellants. In those cases contributory negligence was expressly predicated upon the fact that the plaintiff, after seeing the approaching car, continued on his way without looking again to observe its position, and so "tested an obvious danger." Even if defendants' truck might have been physically visible for a considerable distance from the crossing, we cannot say here that Mrs. Smith must have seen it if she looked as she says she did. The driver of a car is not required to notice every car that happens actually to be within the range of vision, but only those within that radius which denotes the limit of danger. As was said in Marshall v. Staab, 83 Pa. Superior Ct. 365: "If the jury believed his story that he looked and saw nothing, they might have inferred that defendant was so far away that he was not within the area which ordinarily would be covered in the act of looking." See also Bollinger v. Greenaway, 83 Pa. Superior Ct. 217. We have indicated above that Mrs. Smith's attention was not wholly free to observe cars approaching from the south, but was to some extent diverted by the presence of two cars on the opposite side of the street, by which she had to pass,—a fact which differentiates this case from that of Wescott v. Geiger, 92 Pa. Superior Ct. 80. Under all the evidence we cannot say that the trial judge should have declared the wife plaintiff guilty of contributory negligence.

In view of the reasonableness of the award to the husband plaintiff of damages in the sum of $169.33 for the injuries to his car, we hesitate to prolong this opinion by a discussion of appellants' contention (squarely raised by the first assignment) that the evidence relative to the extent of the injuries and the reasonableness of the cost of the repairs was not sufficient to sustain the finding. The record, however, shows such laxity and informality in procedure and meagerness of proof upon this branch of the case that we deem it our duty to consider the question, particularly as it relates to a matter with which our courts are so frequently required to deal. The only evidence on this subject is that of Horace F. Smith, Jr., the owner, who testified that the glass was badly shattered; that the truck hit the right rear wheel with considerable impact and broke the fender; and that he took it to the Foss-Hughes Company and told them to put it in the condition it was before the accident and that they submitted the bill which he produced. The sole testimony relative to this bill and another for a tire and tube reads: "The Court: What is the repair bill? Mr. MacCoy: $124.38 and $44.95 for tire and tubes. The Court: Is that admitted? Mr. Melnick: No, sir, I will not admit it. The Court: Is there any real doubt about it? Mr. Melnick: I have not seen the bill. [Mr. MacCoy] Q. What were the damages? A. The damages shown on the bill, that covers everything but the tire and tube which, of course, were not purchased there. I think you have the receipt for that. Mr. Melnick: I think if your Honor takes a look at that bill, you will see why I object to it. [Mr. MacCoy] Q. Is that the bill that you paid for the repairs as the result of this accident? A. That is correct. ...... Q. I hand you a bill which purports to be the bill for tire and tubes, amounting to $44.95, and ask you if that is the bill that you paid for tire and tube? A. Well, that part

of it—$44.95. Q. And that you have paid? A. Yes, they have both been paid."

While the repair bill is printed as a part of the record, it cannot be said that either bill was properly introduced in evidence. Granting that the procedure in a case tried before a judge without a jury is frequently more informal than that in the ordinary trial, still some opportunity should be given opposing counsel to interpose a timely objection to the introduction of evidence. As far as the record discloses, there is nothing to show that either bill was handed to the court and, even if they were, there is nothing to indicate that they were offered as a part of plaintiffs' evidence and in a manner which would afford defendants' counsel a proper opportunity to object to them. It is true that the record discloses neither a formal objection nor an exception by defendants' counsel, but it is equally true that there was no formal ruling by the trial judge. From what was said, it seems obvious that what counsel really meant was that he refused to admit that the amounts stated in the bill were the reasonable costs of the repairs necessitated by the collision; his objection was not made particularly against the introduction of the bill itself.

But however lacking in formality the procedure may have been, we still have the fact that one of the plaintiffs testified to certain specific items of damages and further declared that two specific sums were paid for their repair. Although it was his counsel who first stated the amount of the bills in reply to the inquiry of the trial judge, the witness subsequently testified that he paid both bills. Eliminating the bills themselves and the statement of counsel, the only testimony relative to damages to the car is that of the plaintiff as related above. The question is whether this evidence was sufficient to prove the damages and sustain the finding. The general rule is that "when the claim is for pecuniary damage to property

of the character involved in this case, the evidence must fix the actual loss with reasonable precision, through witnesses with knowledge of the fact. This burden is always upon the complaining party. Damages are never presumed; the plaintiff must establish by evidence such facts as will furnish a basis for their assumption according to some definite and legal rule: Forrest v. Buchanan, 203 Pa. 454; Beck v. Baltimore and Ohio R. R. Co., 233 Pa. 344": Frances v. Monongahela R. R. Co., 92 Pa. Superior Ct. 129, 135. Testimony was given here of definite items of damage to the automobile; but the question remains whether, certain items of injury having been proved, sufficient evidence of their pecuniary extent was introduced to justify the court in making a finding. As stated by counsel in his brief, no mechanic was called "to show what the damage was and what the repairs were."

"The measure of a recovery for expenses incurred by plaintiff by reason of defendant's wrongful act is a reasonable sum therefor, and not the amount actually paid out, nor a sum in excess thereof": 17 C. J. 914. Is proof of the amount that plaintiff paid to have his car repaired sufficient evidence of such "a reasonable sum," without additional proof that the charges were reasonable and ordinary in themselves? The authorities are not in agreement on this point. "As to substantial or compensatory damages, it has been held that evidence of the actual or probable cost of repairs and replacements made upon the motor vehicle, or of the contract price therefor, is insufficient to sustain a recovery, in the absence of evidence of the reasonableness of such cost or that it represented the difference in the market value of the motor vehicle immediately before and after the injury. ...... By other authorities, however, it is held that the price paid is sufficient evidence of the reasonable cost of the repairs and replacements, on the ground that the amount paid for a thing is some evidence of its reason-

able value, in the absence of objection to such evidence or of claim that such expenses were unreasonably incurred, especially where the work was done and the parts furnished by one regularly engaged in the repair business and there is nothing in the evidence to cast doubt upon the transaction'': 42 C. J. 1298. We do not seem to have a definite precedent on this question. In Great Bear Spring Co. v. Fischman, 82 Pa. Superior Ct. 502, it was held that sufficient evidence of damages had been given where a bill for repairs was introduced in evidence and it was shown that the bill was made up of the expense of labor and materials actually furnished, and proof was given that the prices were reasonable and ordinary market prices, and that the bill was actually paid. The case, however, does not go to the extent of holding that less evidence than was there introduced would necessarily make the proof insufficient. Where, as here, the items of damage are specified with a reasonable exactness, and the price paid for repairs is shown, we think we cannot say that there was not sufficient evidence to sustain a finding in favor of a plaintiff, particularly when there is no proof whatsoever that the charges were unreasonable: Kiely v. Ragali, 93 Conn. 454, 106 Atl. 502; Great Western Motors v. Hibbard, 112 Wash. 541, 192 Pac. 958; Southeastern Express Co. v. Chambers, 33 Ga. Appeals 44, 125 S. E. 507; Stone v. Travellers Ins. Co., 84 Ind. Appeals 243, 149 N. E. 454. As was said in Great Western Motors v. Hibbard, supra, ''it seems to us that the amount paid would, in any event be some evidence of the reasonable value of the services rendered, and that if it was not sufficient evidence, that was a matter which should have been presented to the consideration of the jury.'' It may be noted further that counsel for defendants made no attempt whatever to contradict the evidence relative to the condition of the car or to show that the prices paid

to repair it were unreasonable. We are not to be understood as approving of the method adopted by counsel for these plaintiffs, but merely say that, under all the circumstances, we are not disposed to set aside the finding. For a full and satisfactory presentation of his case, the safe way is for the plaintiff to introduce competent collateral proof showing that the repairs made were necessary in view of the injuries sustained, and that the prices charged and paid therefor were reasonable. Upon a review of this record we are not convinced that any of the assignments should be sustained.

The judgments are affirmed.