Shore Service, Inc. *v.* Philadelphia Rural Transit
Co., Appellant.

Argued October 14, 1929.

Before PORTER, P. J., TREXLER, KELLER,
LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Warwick Potter Scott,* and with him *J. J. K. Caskie,* for appellant.

*Paul Van Reed Miller,* and with him *Randolph W. Childs,* for appellee.

OPINION BY LINN, J., January 29, 1930:

Plaintiff has judgment on a verdict for damage to its motorbus sustained in collision with defendant's motorbus at the intersection of Starr Avenue and Crescent Boulevard in Camden at about 6:30 A. M., October 27, 1927. According to this record, Starr Avenue is 40 feet wide, entering, but not crossing Crescent Boulevard; the boulevard is described as 100 feet wide, and extends north and south; Starr Avenue enters the boulevard, not at right angles, but by a northeast or southwest course.

We accept the verdict as establishing defendant's negligence, but the evidence also shows the contributory negligence of plaintiff's driver. He drove northeastward on Starr Avenue, intending to enter Crescent Boulevard, and to turn left and travel north toward Philadelphia. Driving on the right side of Starr Avenue, as he approached the intersection, he had ample opportunity, before he entered the boulevard, to look to his left (where the intersecting sides formed an oblique angle) for approaching traffic, but he did not look for it, when he should have done so, or, if he did, he disregarded what he should have seen—defendant's plainly approaching bus travelling southward through Camden.

There is some slight but immaterial variation in the driver's account of his conduct in driving from Starr Avenue into the boulevard. He states that he drove

his bus half its length into the boulevard and then saw defendant's bus approaching only 75 feet away. He said ''I had about 15 feet, about middleway of the bus, about 15 feet out on Crescent Boulevard, I seen this other bus coming down, and I stopped. He was coming down at a fast speed, and hit me in the left hand front wheel.'' Again, he states that ''when I first seen him coming I started stopping right away, because I didn't want to get out in front of him ........;'' he also says that he first saw the bus when his front wheels were crossing the curb line of the boulevard; that defendant's bus was travelling 50 miles an hour but that notwithstanding that speed it stopped in about 50 feet, and two or three feet from the left curb. On the driver's right, that is, at the southwest intersection of Starr Avenue and the boulevard, is a Sears-Roebuck department store, fronting on both streets; on the northwest corner, on the driver's left, there were no structures at the projected building line for a distance of 150 feet (this distance was given by witnesses for both sides) until an overhead bridge was reached, described as Federal Street and as the Pennsylvania Railroad bridge. There was therefore no obstacle to prevent his view of approaching traffic for that 150 feet plus such longer distance (not stated in the evidence) as the eye would see under the bridge constructed over this wide boulevard. Another witness called by plaintiff who was 200 feet south of Starr Avenue saw defendant's bus ''coming under Federal Street bridge.'' Why did not plaintiff's driver see it then?

In entering the boulevard from Starr Avenue for the purpose of crossing the right or southbound lane of travel, it was his duty to look for approaching travel at the first opportunity; as there was nothing to interfere with his view to the left from Starr Avenue, he had that opportunity before he put the front of his

bus out into the boulevard; it was also his duty to drive with his bus under such control as to enable him to stop before he put it within the line of collision with approaching southbound vehicles if their approach was reasonably to have been anticipated; he may have acted promptly in stopping his bus when he got into the main thoroughfare and saw the approaching bus 75 feet away, but by that time he had violated a plain legal duty prescribing how he should have driven from the narrow street into the wide one; and that breach of duty contributed to the collision; see generally Miller v. Transit Co., 62 Pa. Superior Ct. 568, 570; Steinberg v. Transit Co., 87 Ibid 321, 324; Frank v. Pleet, 87 Ibid 494; Walker v. Transit Co., 95 Ibid 461; Mehler v. Doyle, 271 Pa. 492; Alperdt v. Paige, 292 Pa. 1.

While appellee agrees that its driver was in the boulevard when he first saw the approaching bus 75 feet away, it contends that there is no evidence that he did not look to the left for approaching traffic before that time. The law will not permit him to say that he looked where he had an unobstructed view without seeing what was approaching in plain view. Appellee also contends that "the fact that plaintiff's driver testified that defendant's bus was 'coming down underneath the bridge' would indicate an up-grade in the boulevard on the far side [of the bridge], which, with the intervention of the bridge would create an additional bar of view from Starr Avenue." But there was a distance of 150 feet between the bridge and Starr Avenue, and he was on the right side of the avenue with an unobstructed view to his left while still within the lines of the avenue and yet did not see the bus until it was within 75 feet of him. There is no evidence that on the "far side" of the bridge there was any grade that would make the bridge an obstruction to the view; an inference of that fact cannot be made from the mere phrase 'coming down underneath the bridge,' a state-

545

ment, which, in the circumstances shown in the record, was a mere colloquial expression indicating southward travel. In the opinion refusing judgment n. o. v. the trial judge says: "The first opportunity he [plaintiff's driver] had of seeing the defendant's bus was when he reached the curb. Had he looked sooner he would not have been able to see it because of the grade at the point where the railroad crosses the boulevard." The evidence is that there was no obstruction to his view from the house line, nor is there any evidence of any grade unless it be inferred from the word 'down'; but even on that supposition it was the driver's duty to see the bus at least 150 feet away when it emerged from under the bridge, and at the speed at which he estimated that it was travelling, he must have known that he could not cross ahead of it without taking a risk that the prudent man would not take; he could not test an obvious danger without taking the risk. Concerning the matter of a descending grade on the far side of the bridge sufficient to make the bridge an obstruction to the view from Starr Avenue, it may be said that while an inference of fact may be made from evidence, the law does not tolerate inference or presumption from other inferences or presumptions: Bartolet v. McAdoo, 74 Pa. Superior Ct. 29, 33; Buck v. Cab Co., 75 Ibid 440, 443.

Judgment reversed and here entered for defendant.