Spear and Company, Appellant, *v.* Altmyer.

Altmyer *v.* Spear and Company, Appellant.

Argued April 30, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER and RHODES, JJ.

*Robbin B. Wolf,* of *McCreery & Wolf,* with him *Robert M. Ingram,* for appellant.

*Thomas W. Neely, Jr.,* with him *Thomas W. Neely, Sr.,* for appellee.

OPINION BY CUNNINGHAM, J., October 9, 1936:

These two appeals by Spear and Company have been taken from judgments in cross suits for property damages incident to a right angle collision between a truck of the appellant and one belonging to Alph P. Altmyer. The actions were tried together in the court below, and argued together in this court; both appeals will be disposed of in a single opinion.

The collision occurred on July 19, 1934, at the intersection of Fulton and Sheffield Streets in Pittsburgh. Sheffield is an east and west street, 36 feet in width from curb to curb; Fulton Street, 24 feet from curb to curb, runs north and south. At its intersection with Sheffield, Fulton is the through highway and a "stop" sign was erected at the southwest corner of the streets, requiring traffic going east on Sheffield to come to a stop before entering the intersection.

The half ton truck of Spear and Company, in charge of one of their drivers, Louis Pinkerton, was coming

south on Fulton Street, and the one and a half ton truck of Altmyer Brothers, driven by their employee, Frank Barr, was going east on Sheffield. The vehicles collided about the middle of the southern half of the intersection.

Neither driver gave a convincing account of the manner in which the accident happened. According to their respective stories, neither of them saw the truck of the other until the moment of collision. The day was clear; the streets dry; and there was no other traffic in the intersection.

The trial judge submitted both cases to the jury. In the action in which Spear and Company was the plaintiff, claiming for damages to the truck going south on Fulton Street, the verdict was in favor of the defendant, Altmyer. Plaintiff's motion for a new trial was overruled and it has appealed to No. 263, April Term, 1936, of this court, from the judgment on that verdict.

In the case in which Altmyer was the plaintiff the verdict was in his favor for the sum of $191.96; Spear and Company's motions for judgment n. o. v. or a new trial were denied and that company has appealed to No. 264, April Term, 1936, of this court, from the judgment on the verdict in favor of Altmyer. In brief, the jury held Pinkerton, the Spear and Company driver, *solely* responsible for the accident.

1. We shall first inquire whether Spear and Company have any valid ground for a new trial of the action in which they unsuccessfully claimed damages from Altmyer. The next full width east and west street north of Sheffield was Pennsylvania Avenue, but about the middle of the block there was a narrow east and west intersecting street, named Stedman. Pinkerton, the driver for Spear and Company, testified that after crossing Stedman on his way south on Fulton he stopped to fasten more securely a washing machine

he was hauling and then proceeded toward Sheffield at a rate of speed between twenty and twenty-five miles an hour, and that the only other car between him and Sheffield Street was one parked on the south side of Fulton "five or six feet" from the corner.

In his direct examination, Pinkerton gave this version of the collision: "Q. I ask you whether as you approached Sheffield Street you got any warning by a horn or otherwise of the approach of Altmyer [Barr] on Sheffield Street? A. I don't remember that. Q. I want to ask you this,—if the curb lines of Fulton Street were extended across and the curb lines of Sheffield extended right across and we call that space in there the intersection, which car was first committed to the intersection, yours or the Altmyer Brother's car? A. I was first. I got pushed out of it. ...... Q. Where was the Altmyer Brother's truck when you first saw it? A. On top of me. ...... Q. What would you say as to the speed of Altmyer Brother's truck across that intersection? A. Upwards of 40 miles an hour. Q. Can you state of your own knowledge whether or not the car had stopped at the stop sign? A. No, sir; did not stop. ...... Q. When he was coming out of Sheffield and you were coming out of Fulton, what happened? A. I was about half-way out, and this truck was traveling up Sheffield Street near the curb; he came to Fulton Street, he hit me on the right front, right side. ...... Q. With what part of Altmyer Brother's car did your car come in contact? A. The front end, left side. Q. You said the effect of that on your car was to turn it about half-way round? A. Yes, sir. Q. What became of the Altmyer truck? A. He went on up the street, Sheffield Street. Q. State whether or not he turned over. A. When I got there his truck was turned over. Q. And that was how far from the intersection? A. I would say, 35, 40 feet."

On cross-examination, Pinkerton said he was familiar

with the intersection. Excerpts from his testimony read: "The Court: Q. As I understand the testimony in this case, there was nothing, no building on that corner of Fulton and Sheffield Streets, that would be the northwest corner of Fulton and Sheffield Streets. A. There is a building which sits back, there is a yard in front of the building. Q. How much clear space is there from the building down to the line of Sheffield Street? A. 15, 20 feet. Mr. Wolf: Q. Mr. Pinkerton, I neglected to ask you whether as you were driving along Fulton Street coming toward Pittsburgh had you any intention of making a turn in Sheffield? A. No, sir. Q. As you were driving along Fulton toward Sheffield Street where was your attention? A. On my traffic. Q. What do you mean by that? A. On my driving, I was paying attention to my driving. Q. Can you state whether or not you were keeping any lookout ahead? A. Yes, I was. ...... Q. Mr. Pinkerton, you stated, I believe, that you were looking out ahead for traffic? A. Yes, sir. Q. As you came to the intersection. And with the exception of this car sitting there you had a full view? A. Yes, sir. Q. And you could see a car approaching on Sheffield Street, could you? A. Yes, sir. Q. And you didn't see the Altmyer Brother's car on Sheffield Street? A. No, I had been close to the curb that square and I had to swing out to my left to pass this car that was parked there; I was watching when I passed him. Q. Then, as a matter of fact, you were not looking on Sheffield Street when you passed that car and entered the intersection? You were watching that car that was parked there. A. When I entered the intersection I was. Q. You were watching the car that was parked? A. *No, I was watching my traffic.* The court: Q. When you got to the intersection of Sheffield Street and Fulton Street did you stop? A. No, I slowed up. Q. Where

was the Altmyer truck when you got to that intersection? A. On top of me." (Italics supplied).

We therefore here have a witness testifying that from the moment he passed the house line on the North side of Sheffield, which was from 15 to 20 feet back from the curb, he had an unobstructed view to the west along Sheffield and could see any car approaching upon his right, and, although he looked and continued to look, he did not see the Altmyer truck (which must have been in plain view), until it was "on top" of him. Although in one part of his testimony he says he did not see the Altmyer truck until it struck him, he stated positively in another portion that it was coming at a rate of more than 40 miles an hour and did not stop at the "stop" sign.

The only possible construction which can be placed upon his testimony is that he either drove into the intersection at a speed of from 20 to 25 miles an hour without looking for any vehicles which might be approaching, or, if he did look, he drove directly into the path of a truck which he must have seen coming on his right at the rate of 40 miles an hour. In either event, he was plainly guilty of contributory negligence as a matter of law and the trial judge would have been justified in giving binding instructions for the defendant, Altmyer. A driver approaching an intersection must not only look for cross traffic when he first reaches it, but must continue to look as he crosses in order to avoid a possible collision. The failure to perform this duty renders him contributorily negligent: *Riley v. McNaugher*, 318 Pa. 217, 178 A. 6; *Shapiro et ux. v. Grabosky*, 320 Pa. 556, 184 A. 83; *Stevens v. Allcutt*, 320 Pa. 585, 184 A. 85. The fact that such a driver is on a through highway, or otherwise has the right of way, does not relieve him of his duty of care at intersections: *Bailey v. C. Lewis Lavine, Inc., et al.*, 302 Pa. 273, 153 A. 422; *Byrne et al. v. Schultz*, 306 Pa.

427, 160 A. 125. Pinkerton's statement that he looked but did not see cannot avail Spear and Company since if he had looked attentively, under the circumstances, he would have seen: *Riley v. McNaugher,* supra; *Seiwell v. Hines, Director General,* 273 Pa. 259, 116 A. 919; *Lamp v. Pennsylvania R. R.,* 305 Pa. 520, 158 A. 269.

As no verdict for Spear and Company could be sustained, the court below did not err in refusing a new trial in this case, and the judgment in favor of Altmyer will accordingly be affirmed.

2. Our next inquiry is whether binding instructions for the defendant should have been given, as requested, in the case in which Altmyer was the plaintiff upon the ground that the testimony of his driver, Barr, showed he was equally guilty of contributory negligence as a matter of law.

The material portions of his direct testimony read: "I was coming home, coming up Sheffield Street, made a stop, a stop sign there; I saw a machine pulling down on my right on Fulton Street, I waited to see what he was going to do; he motioned for me to go ahead, and *I looked to the left and didn't see nothing* and I started on across, and when I got pretty near across the street the machine hit me and knocked my truck about 40 feet, turned it around and upset it. Q. You say there was a stop sign at the corner there? A. Yes, sir. Q. Did you stop at the stop sign? A. Yes, sir, I stopped at the stop sign. The stop sign was on Sheffield Street; there is none on Fulton Street, it is on Sheffield Street. ...... Q. When you stopped did you look both ways? A. Yes, sir, I looked both ways before I started out. Q. What did you see? Did you see anything coming from your left, from Pennsylvania Avenue? A. Didn't see nothing coming from my left at all; just a machine on the right. Q. And he motioned for you to go ahead? A. He motioned for me to go over. ......

Q. You say the stop sign was eight or ten feet from the corner and that you stopped at the stop sign. Now, could you see both ways on Fulton Street from where you stopped? A. Yes, sir." (Italics supplied)

Pertinent excerpts from his testimony upon cross-examination read: "Q. Where was it that you brought your car to a stop? A. I made my stop below Fulton Street. Q. About the point of the sign, about where the sign was? A. Well, a little below the sign. Q. And that is a slight up-grade? A. It is up-grade, yes, sir. ...... Q. At what rate of speed were you driving at the time you crossed Fulton Street? A. I was in first gear, I wasn't going very fast, in first gear. ...... Q. Are there buildings on all four corners at Sheffield and Fulton? A. They stood back off the corner a little. Q. And when you came to your first stop, as you state, you were far enough that you could see down Fulton Street how far? A. I could see down to Pennsylvania Avenue. ...... Q. Is that a full sized city block? A. I didn't see nothing down. Q. I say, is that a full length city block? A. Yes, sir."

Here again, we have a driver testifying that, with his truck at a full stop on Sheffield Street, 8 or 10 feet below the intersection, and with a clear view to the left along Fulton for a full city block, he looked to his left and "didn't see nothing coming from [his] left at all"; and that he drove into the intersection and was struck by the Spear and Company truck when he had gone less than 30 feet.

We think it obvious that this driver also either proceeded into the intersection without looking, or, if he looked, drove directly into the path of a truck which he must have seen approaching rapidly on a through street.

Under the authorities we have cited, we think Barr was equally guilty with Pinkerton of contributory negligence as a matter of law.

As we read the testimony of these drivers, each has convicted himself of contributory negligence as a matter of law and has thereby deprived his employer of any actionable claim to be compensated for the damages to the respective trucks. It follows that the single assignment of error in this case, based upon the denial of the motion of Spear and Company for judgment in its favor n. o. v., must be sustained.

The judgment at No. 263, April Term, 1936, is affirmed; the judgment at No. 264, April Term, 1936, is reversed and here entered for appellant.