## Clee v. Brinks, Inc., Appellant.

Argued October 21, 1938.

346

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

G. A. *Troutman,* of *Wesley, Wagoner, Troutman & McWilliams,* for appellant.

*Philip A. Campbell,* with him *Victor Frey,* for appellee.

OPINION BY CUNNINGHAM, J., April 12, 1939:

The cause of action out of which this negligence case arose was a right-angle collision by an armored International truck, owned by the defendant and operated upon its business by one of its drivers, with a Chevrolet automobile, owned and driven by the plaintiff, in the intersection of Westmoreland Street and North Park Avenue, Philadelphia, and alleged by plaintiff to have been caused by the failure of defendant's driver to exercise due care under the circumstances.

The trial resulted in a verdict of $1350 for the plaintiff, covering damages to his car and his personal injuries; defendant's motions for a new trial, or judgment in its favor n. o. v., were denied and it has appealed from the judgment entered upon the verdict.

Although counsel for appellant have filed five assign-

ments of error, their statement of questions involved includes only the fourth and fifth in which they charge, in substance, that the trial judge, after having stated to the jury that the testimony of plaintiff and his witnesses convicted him of negligence, as a matter of law, erroneously instructed them to consider and determine, as a matter of fact, whether plaintiff's negligence contributed to the happening of the accident and his consequent injuries. Their contention is that the trial judge should have declared plaintiff guilty of contributory negligence as a matter of law and affirmed, upon that ground, their point for binding instructions.

Plaintiff introduced evidence from which, if believed, a jury could reasonably find that appellant's driver approached and entered the intersection at a rate of speed so excessive as to amount to negligence; we, therefore, assume, for the purposes of this appeal, that he was negligent.

The manner in which this case was submitted to the jury renders necessary a review of the evidence, by and on behalf of plaintiff, and the quotation of the challenged portions of the charge. Westmoreland Street is an east and west street, 26 feet in width from curb to curb, with sidewalks 12 feet wide; Park Avenue runs north and south, 34 feet between curbs and having 13 foot pavements; each is a two-way street; there was no traffic control, by lights or otherwise, at the intersection; buildings were erected on each corner; there was no other traffic in or near the intersection, nor were any cars parked near it; the accident occurred about 2:30 o'clock on the afternoon of December 23, 1936, a clear and dry day.

Plaintiff was driving east on Westmoreland Street and appellant's truck was proceeding north on Park Avenue. The first witness called by plaintiff was Fred Getz, an experienced truck driver, who was standing on the northeast corner of the intersection and had an unobstructed view of the occurrence. Excerpts from

his testimony read: "I saw a motor vehicle coming east on Westmoreland Street, so I stayed on the northeast corner waiting for it to go past me. As I looked down the street I saw a truck coming. Q. Which way was he coming, on what street? A. North on Park Avenue. ...... Q. Go ahead and tell us what you observed about the car that was coming east on Westmoreland. A. The car had came, the passenger car had came to a stop at the southwest corner and then he proceeded ahead. I stayed on the northeast corner waiting for this car to pass. As it got about, well, I would say 14 or 15 feet, pretty near to the mid-section, this truck hit it. Q. You say it got the mid-section of what street? A. Park Avenue. Q. Was the front or the rear of the passenger car at the middle of Park Avenue when it was hit? A. I would say the rear of the car was because his front was more towards the east side of Park Avenue. Q. What part of the passenger car was hit? A. The rear, the rear right. Q. What effect did the collision have on that car? A. Well, it skidded it across Westmoreland Street to the northeast corner. ...... Q. Did you see any marks, tire marks, in the street at the point or near the point of collision? A. Well, there was skid marks where the truck had applied his brakes. I judge from where he applied his brakes and with the pushing he did with the car was at least 14 feet. Q. You mean those skid marks extended 14 feet before he hit the car? A. Well, I wouldn't say before; I would say about 10 feet before he hit the car. Q. Then four feet more after he hit it? A. After the car was hitted. There was a skid mark the other way. Q. How long have you driven automobiles? A. I have been driving for 22 years. Q. Have you driven passenger cars as well as trucks? A. I have driven passenger cars; I have driven trucks; and I have driven ambulances. Q. Are you able to give us an opinion as to how fast that bank truck, as you call it, was going just before it hit this automobile? A. Well, as close as I could imagine, that is in driving

experience, I would say he was going at least 35 to 40 miles an hour. Q. Can you tell us about how fast Clee's car was going eastward at that time? A. Well, you can't go very fast after you stop. Q. Give us your opinion. A. I would say he was going at least 10 miles an hour. Q. At most how much? A. Well, at most he could do, would be 15 miles an hour in first gear." On cross-examination the witness said: "When I first took a notice to a car, the truck coming north on Park Avenue I would say he was about 85 feet from the crossing."

Norman Miller, another witness called by plaintiff, testified he was riding north on Park Avenue on his bicycle when appellant's truck caught up with and passed him. When asked about the speed of the truck his reply was, "I would say over 35. I can't tell if it was more. I know it was going 35 [miles per hour] because I go pretty fast on my bike."

Plaintiff's version of the accident reads: "Then you came to the west side of Park Avenue, now go ahead. A. I come up there and I looked to—I slowed down, I looked to my right and I didn't see anything coming. Q. How far could you see down Park Avenue to your right at that time? A. About one hundred feet down Park Avenue. ...... Q. To what speed did you slow down before you took that look? A. I slowed down, I throwed out of gear, looked to my right and then after I turned from my right I looked to my left, and I put it in second gear. I didn't see nothing coming. I started on across the street. I just started to look to my right again and this here truck was right on top of me, just ready to strike me. Q. How far would you say the truck was away from you when you say he was almost on top of you? A. Oh, about just a couple feet, because I only had time to throw my right hand up in front of my head to protect my head. Q. How far was the rear end of your car across Park Avenue when the collision took place? A. The rear end was pretty near three-quarters

away across the street. Q. How close to the car's [truck's?] east side was the front end of your car when the collision happened? A. Only a couple of feet. Q. How much is the overall length of your car? In other words, how long is your car from the front bumper to the back bumper? A. About eleven or twelve foot. Q. What part of your car was struck? A. The right side, mostly towards the back. ...... Q. How fast were you going across Park Avenue? A. I was only in low gear. I will say about ten or twelve miles an hour in low gear. Q. Was any horn blown by the driver of that car that came north on Park Avenue and struck you? A. I didn't hear any horn or anything. Q. Was there much traffic on the street, on either or both of those streets at that time? A. No, sir. Q. Was there any traffic except you two that you observed? A. Not that I can remember."

Upon cross-examination plaintiff, after testifying he was familiar with the intersection, continued as follows: "Q. There was a gentleman here yesterday who said you stopped. He was mistaken on that? A. I was pretty near to a stop; it wasn't exactly a stop because I throwed into a lower gear. I slowed up and looked. I didn't see nothing coming, and I looked to my left and didn't see nothing coming there. I proceeded in a lower gear, started on across. I started to look to my right again, I saw this truck was barely about to hit me. I throwed up this arm and it is all over. (Indicating) Q. As I understand, that point at which you looked was at the houseline on the west side of Park Avenue? A. About the houseline. Q. And then I believe, as I understand, the next observation you made was when this car was practically on top of you? A. Right on top of me."

After correctly instructing the jury with respect to the rights and duties of drivers approaching an intersection from the right and the left, respectively, the

trial judge took up the question of the alleged negligence of the plaintiff. This portion of the charge reads:

"And you must consider whether the plaintiff was also negligent. Under the law he was negligent because he said he looked at the houseline; he never looked again until he was hit which was almost three quarters of the way across the street. You can't drive that way. That in itself, our courts have said, is careless driving because he didn't look as he was going across for the space of most of the way across the street. From the testimony of his own witnesses I think you should come to some conclusion as to whether or not he would have seen that truck if he had looked down some distance. So it seems to me you have almost no alternative but to say that he was himself negligent, and if he is negligent he cannot recover if that negligence contributes to the accident.

"There is a question you must determine. Did his own negligence contribute to the accident? If it didn't, he can still recover even though he might have been negligent. In other words, *if he had looked,* would he have seen such a situation as would have told him he could go ahead, that he could have gone across safely, if he did proceed across, the defendant, coming at the rate at which he was coming, had time to stop and would stop and yield the right-of-way to him, because the plaintiff, if he had looked, *would have had a right to presume that the defendant would stop for him if he,* the plaintiff, was committed to the crossing, and most of the way across before the defendant got up near to that crossing—*he had a right to presume all that so that even if he was negligent he may still recover* unless his negligence *directly was responsible* for the accident along with the defendant's negligence.

"So, therefore, you have if you believe the plaintiff's story, to consider first of all whether the defendant was negligent, and, as I said, that evidence does indicate facts from which you may find that he was negligent.

352

*The plaintiff himself was negligent, I instruct you that he was;* you can't find that he wasn't because he was, under the law.

"Then your problem is to determine whether if he hadn't been negligent and had looked, under the facts as you have them, and you don't have too many—you just have to take what you got out of the witness stand —that negligence contributed to the accident; that is, you are to consider whether if the plaintiff had done what he should have done and looked, he could have avoided the accident. If he had looked and had seen the defendant, you have to consider whether he then should have stopped, and if he should have stopped and not gone on, seeing the situation as it was, then he can't recover from this accident.

"I realize that is a bit complicated but that is the law and that is about as clear as I can make it for you. *If any of you are particularly confused about that, you can ask me some questions about it when I finish.* That is as clear as I can make it for you right now." (Italics supplied)

At the conclusion of the charge counsel on both sides specifically excepted to the portions above quoted. The colloquy between counsel for appellant and the trial judge reads: "Mr. Troutman: If your Honor please, will you allow me an exception where you charged that even if he was negligent the jury is to determine whether that was contributory negligence? The Court: I charged them, I think, that they were to determine whether or not there was a causal. Mr. Troutman: My position is, of course, that if he was negligent, that per se constitutes contributory negligence. The Court: I grant you an exception. Mr. Troutman: Will your Honor charge the jury that if contributory negligence in the slightest degree contributed to the accident, there can be no recovery? The Court: That is right. In view of the charge I should say that. If the plaintiff's negligence in any way contributed, it doesn't have to be the chief

cause or even be equally causal with the defendant's negligence, to the accident, he can't recover."

The ground upon which the trial judge held the plaintiff guilty of negligence, as a matter of law, was evidently his admission that after looking to his right at the houseline he did not again look in that direction until appellant's truck was "right on top of" him. *Shapiro et ux. v. Grabosky,* 320 Pa. 556, 184 A. 83, *Woerner v. Heim,* 124 Pa. Superior Ct. 246, 188 A. 391, and cases cited in those opinions.

Counsel for the defendant argues that the trial judge should have directed a verdict for the defendant because "there can be but one kind of negligence of which a plaintiff can be guilty. It is known as contributory negligence." This argument cannot be sustained. Just as a negligent defendant cannot be held liable in damages unless his negligence is a cause of the injuries complained of, so too a plaintiff who is negligent is not barred from recovery unless his negligence is a cause of his injury. Indeed, the very term "contributory negligence" means not merely that the plaintiff was negligent but also that his negligence contributed to causing the harm.

"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm." Restatement, Torts, Section 463.

"The plaintiff's negligent exposure of himself to danger or his failure to exercise reasonable care for his own protection is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm, and there is no rule restricting his responsibility because of the manner in which his conduct contributed to his harm." Restatement, Torts, Section 465. See also Section 468. Although the Pennsylvania cases may lay down a slightly different rule

from that stated in the section last quoted (see Restatement, Torts, Pa. Annot., Section 465), there is no doubt that a plaintiff's negligence must, at the least, be a causa sine qua non of his injury before he is barred from recovery: *Little v. Straw,* 326 Pa. 577, 192 A. 894; *Lane v. Mullen, Inc.,* 285 Pa. 161, 131 A. 718; *Purol, Inc., v. Great East. Syst. Inc.,* 130 Pa. Superior Ct. 341, 197 A. 543. Otherwise, although the plaintiff's conduct may be negligent it is not "contributory negligence."

The difficulty with this case, as we view it, is not that the learned trial judge incorrectly stated the abstract principles of law which he deemed applicable, but whether they had any application to the evidence, when read, as it must be, in the light most favorable to the plaintiff.

As we read the testimony of plaintiff and his witness, Getz, above quoted at length, it leaves no room for speculation about what plaintiff would have seen if he had looked to his right at the west curbline, or before entering upon the northbound traffic lane, of Park Avenue. He would have seen a truck, having the right of way, approaching at a distance of less than 100 feet and at a speed of at least 35 miles per hour. Plaintiff admits there was no other traffic on either street to obstruct his view. The law will not permit a driver to say that he looked where he had an unobstructed view without seeing what must have been within the range of his vision: *Shore Service, Inc., v. P. R. T.,* 97 Pa. Superior Ct. 541.

Nor do we see any justification in the testimony for instructing the jury to consider and determine whether, *if* plaintiff had looked and *if* he had seen the truck, he would have been justified in assuming that its driver would stop before entering the intersection.

In *Newman v. Reinish,* 106 Pa. Superior Ct. 351, 354, 163 A. 58, we said: "While the driver of a car is not required to notice every other car that happens to be

approaching within the range of his vision, it is his duty to observe those which are within the area ordinarily covered in the act of looking: *Marshall v. Staab,* 83 Pa. Superior Ct. 365; *Smith, Jr. v. Blafkin,* 95 Pa. Superior Ct. 520. It was plaintiff's duty to continue to look for approaching traffic as he advanced ...... As stated in *Wescott v. Geiger,* 92 Pa. Superior Ct. 80, 83, following familiar decisions of our Supreme Court, a person using a public highway must use reasonable care by the exercise of his senses to prevent his own injury, and if he fails to do so the consequences must fall upon him, although the negligent act of another caused his injuries. While one is not required to anticipate and guard against want of ordinary care on the part of another, it is as much his duty to use due care to avoid a collision if the driver of the other vehicle is negligent as it is if he was not: *Mehler v. Doyle et al.,* 271 Pa. 492, 495." See also *Gooden v. Allan C. Hale, Inc.,* 116 Pa. Superior Ct. 335, 176 A. 855; *Spear and Co. v. Altmyer,* 124 Pa. Superior Ct. 9, 187 A. 309; and *Harvey v. Phila. Rapid Transit Co.,* 255 Pa. 220, 99 A. 796.

No matter how negligent defendant's driver may have been, plaintiff would not have been injured if he had used his eyes and exercised ordinary care under the attendant circumstances. If plaintiff had not driven blindly on he would have seen defendant's truck coming at such a speed, compared with his own, that the exercise of reasonable prudence would have required him to stop and let the truck pass in front of him. In our opinion, it was so clear, from the testimony by and on behalf of plaintiff, that his negligence in driving into the intersection, and particularly the northbound traffic lane, without looking to his right after passing the houseline was such a "substantial factor in bringing about his harm" that the trial judge should have declared him guilty of contributory negligence. It follows that defendant's point for binding instructions should

356

have been affirmed, or its subsequent motion for judgment n. o. v., granted.

Judgment reversed and here entered for appellant.