Mr. Chief Justice Shamcey
delivered the opinion of the court.
The plaintiff in error was sued, as the administratrix of Spence M. Grayson, who was an attorney at law, to recover damages for the negligence of said attorney, in failing to defend a suit brought by Whiting & Slack against Wilkinson & Willi-son, in the district court of the United States for the district of Mississippi.
*286 During the progress of the cause, the defendant took exceptions to certain testimony, and to the charges given by the court at the request of the plaintiff, and also to the refusal of the court to give certain instructions, asked by the defendant’s counsel.
The history of the suit of Whiling & Slack against Wilkinson and Willison is important in this controversy, and is in substance as follows : Wilkinson & Willison, as attorneys at law, had collected in this state the sum of $2611 for Whiting & Slack, merchants of New Orleans, and by letter, dated the 19th of May, 1836, advised them of the collection, and requested them to draw at sight for the amount, or to direct that it should be sent to them in any way they might wish. Thereupon Whiting & Slack did draw a bill for the amount, payable to their own order, which bill was transmitted to the Planters Bank at Natchez, for collection, and by that bank forwarded to its branch at Manchester, the place of residence of the drawees, and in consequence of the absence of the drawees, it was protested and returned. The draft was drawn at sight, and dated in the early part of the summer of 1836.- Iu July, Wilkinson & Willison, or rather Willison, the partnership having been dissolved, sent the money by J. W. Exum, to Whiting & Slack, and it was stolen from him at Natchez, on his way to New Orleans, together with a considerable sum of his own money. For the money so lost Whiting & Slack brought the suit above-mentioned.
To prove that Grayson was retained, the deputy clerk testified that, on examination of the dockets, he found the name of Grayson entered as attorney, iu his (the deputy’s) handwriting, and that he never made such an entry without directions from the attorneys. In consequence of a failure to file a plea, a judgment by default was taken. It was also in proof that Exum was a prudent, trustworthy man.
At the request of the plaintiff’s counsel, the court gave this charge ; That if Wilkinson & Willison forwarded the money by a trustworthy man, who was robbed of it on the way, having taken such care of the money as a prudent man would *287 have taken of his own money under like circumstances, that it was equivalent to a payment and would exonerate them from liability to Whiling & Slack; otherwise if he was imprudent, or the money was lost by his neglect. The defendant’s counsel requested the court to charge the jury, that if Whiting & Slack had drawn a bill on Wilkinson & Willison for the amount they had collected, directing them to pay the money to the payees, if they neglected to pay, then they had no right to send the money by another person without directions, and if by so doing the money was lost, then the attorneys were liable. That they must be satisfied that Grayson was employed to defend the suit, and that he was informed what the defence was, or he was not liable, and they must find for the defendant. That if claims were placed in the hands of Wilkinson & Willison, while they were in partnership, and were collected by either after the dissolution, then either was liable; and the sending of the money by Exum by either of the attorneys was not a payment unless it was received, unless directions had been given so to send it. These instructions the court refused to give.'
On the foregoing case the counsel for the plaintiff in error have made three points on which they rely for reversing the judgment.
1. Was there a retainer of Grayson, to defend the suit 1 2. If there were, was it not incumbent on Wilkinson, before he could recover for neglect, to prove that he informed Grayson what defence he had to the action 1 3. Can an attorney or debtor deliver money, collected or owing by him, to any third person to pay to the principal, without authority from the prin-pal, and if it be lost, or not paid, does it amount to a discharge of the attorney or debtor 1
First. As to the proof that Grayson was retained in the cause; it is very unsatisfactory, and if the case depended on this point alone, I should think it very questionable whether it was sufficient to justify the verdict. The clerk may have entered the name at the request of the defendant, which is not at all uncommon. In the case cited from 20 Maine R. it seems the attorney acted in the cause, and his name was entered on *288 the records of the court. This case does not come up to that. Here the attorney did not act; his name was entered on the docket, not by himself, but by the deputy clerk, who does not say that he was directed to do so by Grayson, but only that he never entered the name of an attorney without directions. But assuming that there was a retainer, then
Secondly, Was it incumbent on the plaintiff below to prove that he informed Grayson what his defence was % The case cited from 2 Missouri Rep. seems to go this length. The case of Godfrey v. Jay, 7 Bing. 413, settles this principle ; that if an attorney is retained, and suffers a judgment to go by default, he is liable for damages, and it is for him to show that the party has suffered no actual damage. It is not for the plaintiff to show that he had a good defence ; and the case cited from 2 Chit. R. 311, is to the same effect. The right of action is tested by the contract. If an attorney undertakes to defend a suit, he must do so, and if he does not the plaintiff will be entitled to damages. But it does not follow that the amount of the judgment recovered is the criterion of damages. If the defendant can prove that the defence was not a good one, then the plaintiff can only recover, at most, nominal damages. Hence both these cases decide, in effect, that the defendant may prove that the' plaintiff has suffered no actual damage, and consequently if he has suffered no actual damage, he can only recover a nominal amount. The necessary effect of requiring or allowing the defendant to make such proof is, that it wilL discharge him. In the case cited from 1 Fairf. R. 297, it was held, that in a suit against an attorney for negligence, it was competent for the jury to inquire, whether he was guilty of negligence to the prejudice of the plaintiff; for, said the court, to omit to do that which, if done, would have been unavailing, cannot in any just sense be called negligence. These cases all tend to the same result; to wit, that if it does appear that the defence would not have been successful, then the attorney is excusable, or at least only liable for nominal damages. Comyn, in his treatise on Contracts, says that if an attorney is guilty of gross negligence, or conducts his business unskilfully, he is *289 liable for any damages his client may sustain, in consequence thereof. According to this rule, the client would have to show what damages he had sustained. If the attorney employed to defend fails to file a plea, that is a breach of contract, and entitles the plaintiff to recover something; but if he wishes to recover damages to the amount of the judgment against him, then he must show that he has sustained damage to that amount. Thus in the case of Russell v. Palmer, cited 2 Comyn on Cont. 384, Lord Camden thought the measure of damages would be the amount of the debt, in reference to which the attorney had been guilty of negligence, and accordingly directed a verdict for £3000, the whole debt; but a new trial was granted, on the ground that he had misdirected the jury ; and upon the second trial they were told they might find what damages they pleased. The attorney had been guilty of negligence which was prejudicial to his client, and they accordingly gave a verdict for £500. Not only then did the plaintiff below fail in making out a case which entitled him to the amount of the judgment which had been recovered against him, but the defendant succeeded in showing that his defence would have been unavailing, and this brings us to the last point.
Thirdly. Can an attorney deliver money collected by him to a third person, to carry to his client, without authority, and will such delivery amount to a payment, although the money be lost 1 To this we must respond in the negative. We know of no principle which authorizes an attorney to select his own time and mode of transmitting money collected to a foreign client. Even if he became, by the collection, merely a debtor to his client, it would not vary the case. But there is a feature in this case, which must place it beyond doubt. Wilkinson & Willison advised Whiting Slack by letter that the money was collected, and requested them to draw at sight for the amount, or to direct in what way it should be sent. This was throwing the risk of transmission entirely on Whiting & Slack, who accordingly drew at sight, payable to their own order, and indorsed the bill and forwarded it to the Planters Bank for collection. This was designating a mode of payment. The bill was a *290 written direction to pay in that way, and the holders of the money had 'no discretion left. In adopting any other mode of payment, they took the whole risk. See 3 Mass. R. 249. 8 Cow. 198. The defence, then, must have proved fruitless, even if Grayson had been informed what it was, a circumstance which seems to be necessary to entitle the client to recover damages to the amount of the judgment against him. An attorney must know whaUthe defence is, before he can be answerable for failing to make it. The plaintiff in error then is entitled to a new trial, both on the ground that the court refused to charge the jury as requested, and because the verdict was contrary to law and evidence.
Judgment reversed and cause remanded.