## Livingston v. Cox.

Partnerships of attorneys are subject to the incidents of other trading partnerships; and a contract made with one as to matters within the business of the firm, if by him intended for the benefit of the firm, is a contract with the firm, and the survivor alone is answerable for negligence.

If a loss has occurred through the negligence of an attorney, the negligence of one subsequently acting is no defence.

Actions for *torts* when arising out of matters of contract—as actions for negligence of an attorney—are subject to all the incidents of actions *ex contractu*. Per Bell, J.

In error from the District Court of Allegheny county.

*Sept.* 8. This was an action against the administrators of

Livingston. The declaration recited the indebtedness of one Dubbs to the plaintiff, on a note—the employment of Livingston an attorney, for certain hire to collect the same—his promise in consideration of the premises to commence and carry on a suit therefore in a proper manner. That it thereupon became his duty so to prosecute; but he neglected so to do, whereby the claim was lost, though Dubbs was at that time able to pay it. That Livingston and his administrators, not regarding their promise, have not paid, though often requested so to do. To the damage, &c.—*plea not guilty*.

On the trial before GRIER, P. J., it appeared that Livingston was in partnership with Mahan as attorneys, when Cox, the plaintiff, applied to Livingston to collect the note from Dubbs, and Livingston gave his individual receipt for the note to the plaintiff. In speaking of the chance of recovery, he referred to a claim "*we* have for Dubbs" as the only probable source of payment.

On the same day Livingston made out a *præcipe* for a suit against Dubbs, and signed it in the name of Mahan & Livingston. No writ was issued, however, until six months afterwards; when Livingston having died, the *præcipe* was altered by inserting Irwin's name in place of Livingston's, whom he had succeeded in the firm. This action was taken without any directions from Cox.

It was proved the money might have been obtained from Dubbs had suit been commenced at once; but he subsequently became insolvent.

In answer to the defendant's points, his honour said the plaintiff's contract having been with Livingston, the fact that he practised in partnership with Mahan did not affect the case.

2. That if the debt was lost by the negligence of Livingston in his lifetime, any subsequent negligence of others would be immaterial.

These points, and that the verdict and judgment exceeded the damages laid in the declaration, were the errors assigned.

*Williams*, for plaintiffs in error, cited Gratz v. Phillips, 5 Binn. 564; Burke v. Huber, 2 Watts, 306; Reynolds v. Cleaveland, 4 Cow. 282.; Douglass, 371; Schermerhorn v. Loines, 7 Johns. 311; Muldon v. Whitlock, 1 Cow. 290; Trovinger v. McBurney, 5 Cow. 253; Warner v. Griswold, 8 Wend. 665; 1 Chit. Pl. 87; Wilt v. Welsh, 6 Watts, 10; Hunt v. Wynn, 6 Watts, 47; McCall v. Forsyth, 4 Watts & Serg. 180; Bretherton v. Wood, 7 Eng. Com. Law Rep. 345; Ansell v. Waterhouse, 18 Eng. Com. Law Rep. 227; Bank of Orange v. Brown et al., 5 Wend. 158; Zell v. Arnold, 2 Penna. Rep. 295.

*Dunlop* and *Magraw*, contrà, cited sects. 26, 28, of act of 1834, Dunlop's Dig. 515; Dodge *v.* Coddington, 3 Johns. 148; Alexander *v.* McGinn, 3 Watts, 220; Graeff *v.* Hitchman, 5 Watts, 454; Gratz *v.* Phillips, 5 Binn. 564; Spackman's administrators *v.* Byers, 6 Serg. & Rawle, 385.

*Sept.* 29. BELL, J.—The weight of authority has put it beyond question, that though the action may be in form as for a tort, yet if the subject of it be based on contract, the suit will be attended by all the incidents of an action *ex contractu*, and this whether the defaulting party be an infant or an adult. The remark of Sir James Mansfield in Weal *v.* King, 12 East, 534, is, that "the form of the action cannot alter the nature of the transaction," and he added, that, "though the non-performance of that which is originally contract may be made the subject of an action of *tort*, the foundation of that action must still be in contract." This doctrine is adopted by our own cases of Wilt *v.* Welsh, 6 Watts, 10, which denies the soundness of the New York determination in Campbell *v.* Stokes, and of Hunt *v.* Wynn, Id. 47; which recognises that wherever the violated duty necessarily springs from contract alone, the action is *quasi ex contractu*, though the *gravamen* is laid in *tortious* negligence, or breach of duty by positive and express tort. These cases are in consonance with Powell *v.* Layton, 2 New Rep. 365; Max *v.* Roberts, Ibid. 454; Wolcott *v.* Canfield, 3 Conn. Rep. 190; and the Bank of Orange *v.* Brown, 3 Wend. 158. The last was an action against the proprietors of a steamboat, as common carriers, liable either upon the custom or by force of their undertaking, at the option of the plaintiff; and after an examination of most of the authorities to be found on this somewhat vexed question, it is laid down that if the plaintiff relies on the undertaking general or special, the action is, in reality, founded on the contract, and will be treated as such, though the tortious negligence may also be set out in the narr. To this class is to be referred McCall *v.* Forsythe, 4 Watts & Serg. 180, brought against the joint-owners of a stage-coach for an injury done to a passenger. It was decided as being founded upon the custom for a misfeasance, apart from contract; and the court notice the choice, which, in such cases, is open to the plaintiff to bring either assumpsit upon the implied contract of the defendant, or case, as for a breach of his common law duty, and say that the form adopted will be governed by its own rules. The reason why this choice of form against a common carrier is permitted, is that the action requires not the aid

of a contract to support it, though the law will imply a contract if the plaintiff prefers to invoke it. Bretherton v. Wood, 7 Eng. Com. Law Rep. 345; Ansell v. Waterhouse, 18 Eng. Com. Law Rep. 227. Although not at all times obvious, the distinction seems to be between misfeasance, which imports in itself a wrong without reference to contract, and non-feasance, being the violation of an obligation by a neglect or refusal to fulfil its requirements. It is upon this ground that the cases of Zell v. Arnold, 2 Penna. Rep. 295; and McCahan v. Hirst, 7 Watts, 177; and Todd v. Figley, Id. 452, are said to be reconcilable. But at present, it is scarcely necessary to trouble ourselves with these shades of difference; for it is obvious the present is an action in form as well as in substance, upon a contract, specially and circumstantially set out in the plaintiff's declaration, and necessarily so too, for I take it, it is only on this ground an action can be maintained against a negligent attorney or his personal representatives after his death: 1 Chit. Pl. 90. But at the time of the inception of the contract declared on, the defendant's intestate was associated in partnership with John D. Mahan, Esq., as attorneys at law; and the subject of the contract being within the objects of the firm and the scope of its business, is to be taken in law as made with the firm, though but one of the partners negotiated it, and the plaintiff was ignorant of the partnership at the time, unless the transaction be marked by some peculiar circumstance which will prevent it from falling under the operation of the general rule. It is no consequence that a contract was made with and on the credit of one partner alone; for if the acting partner intended it at the time, for the use and benefit of the partnership, the law implies an obligation upon the part of all who are entitled to a share in the profits. The rule is thus established for the benefit and protection of those dealing with partners; but it also operates for the protection of those thus associated, for if a less number than all be sued, it may be pleaded in abatement; Clark v. Holmes, 3 Johns. 146; Murray v. Somerville, 2 Campb. 99; Schermerhorn v. Loines, 7 Johns. 311; Reynolds v. Cleaveland, 4 Cow. 282; Alexander v. McGinn, 3 Watts, 220; and if one of the partners die, no action will lie against his representatives, except upon a suggestion and proof of the insolvency of the survivors. Tacitly admitting this principle to be operative in the case of partnership formed for commercial or other trading purposes, the learned judge, who tried the cause below, seems hastily to have adopted the idea that there is something different in the nature of a partnership, entered into with a view of carry-

ing on the business of an attorney at law, which frees it from the dominion of the general law of partnership; and this, probably, led him to give less attention to the first point, upon which the defendant prayed his instructions to the jury, than its importance under the facts in proof demanded. But the idea is evidently erroneous. The law recognises professional associations between attorneys for the prosecution of their particular business, as lawful, and admits of no distinction between them and other partnerships, at least so far as relative rights and liabilities are involved. As in other partnerships, each member is entitled to any benefit accruing from the conduct of the others; and all are liable for the acts and receipts of each within the scope of the partnership business. Thus, though but one of them appears to and conducts a suit in court, all are entitled to the fees earned, and an action may be maintained in their joint names: Warner & Post v. Griswold, 8 Wend. 665. So the service of a note upon the one not appearing is service upon all; Lansing v. McKillup, 7 Cow. 416. If one partner receives professionally money belonging to a client and absconds with it, the others are liable to answer in damages; McFarland v. Crary, 8 Cow. 253. And, to come home to the case in hand, there can be no doubt that if a suit at law be unskilfully or negligently conducted by one of the partners, the others will be responsible to the client in an action for damages; 8 Wend. 666. This principle has been announced by the Supreme Court of New York, and is not only in accordance with the general doctrine that governs partnerships, but is sustainable upon considerations of public policy, as being necessary to the protection of the suitor, who is compelled to give his almost unlimited confidence to the legal practitioner. It is not, therefore, to be tolerated that the responsibilities of professional partnerships should be held as less extensive and stringent, than those which attach upon similar associations for the prosecution of business connection with general trade.

It follows from what has been said, that if the contract sued on here was made with Livingston, the deceased partner, acting for and on behalf of the firm of which he was a member, the action for a breach of it, occurring in his lifetime, survived against the surviving partner, John D. Mahan, whose solvency is not disputed, and must be so brought, and not against the personal representatives of the deceased. But if Cox and Livingston made the contract as individuals, intending only to bind themselves, and without reference to the partnership, then it would seem as the firm cannot be charged, the action will survive against the estate of the con-

tracting party; Alexander *v.* McGinn, *suprà*, and the cases there cited. That such was the intent of the acting parties, there was certainly some evidence; and on the other hand there was proof well worthy of consideration, that Mr. Livingston acted not for himself alone, but for the firm, all of which should have been submitted to the jury with proper instructions. But this question of disputed fact seems to have been disregarded by the court below, when overruling the first point submitted by the defendant. The charge was, " the plaintiff's contract appears to have been with Mr. Livingston, and the fact that Mr. Livingston practised in partnership with Mr. Mahan, does not affect the case." Now we have seen that the fact relied on by the court, that the plaintiff contracted with Mr. Livingston alone, is of no consequence, unless the latter intended to undertake for himself alone. The jury, upon the proof, might have been satisfied that such was not the case, and this would have defeated the plaintiff's action. At all events, it was a question for the jury, which the court failed properly to present to them, though its attention was called to this particular by the defendant. Nor is this a merely technical objection. Mr. Mahan as surviving partner was entitled to the possession of the estate and effects of the partnership, if any, for the purpose of meeting this and other claims, and it is, therefore, eminently proper he should be called on in the first instance. For the error committed in this particular, the judgment rendered by the District Court must be reversed.

But upon the supposition that it was the understanding and agreement of the parties, that Livingston alone was retained by the plaintiff, we see no objection to the answer given by the court below to the defendant's fourth proposition. It is certainly true, that the measure of damages, in a case like the present, is the actual loss sustained by the negligence of the attorney. But if the claim or debt intrusted to his professional care for collection is not, through his neglect, collected or secured when it might, and reasonably ought to have been; it will not do to say this neglect is excused by the subsequent laches of a volunteer, who possibly, by the exercise of extraordinary diligence, might have made the debt from the wreck of a failing man's fortune. Though this might have been possible, or even probable in the particular case, it may still with truth be affirmed that the client lost the opportunity of securing the amount due to him because of the default of the first attorney, and has, therefore, suffered an injury at his hands, commensurate with the debt due, should the money eventually remain uncollected.

That another was also negligent cannot excuse the first neglect: especially if the latter be a volunteer, and it be at all doubtful under the facts in proof whether the exercise of due diligence would have secured payment.  A case may, indeed, be imagined in which the first attorney, though negligent of his duty, might not be liable beyond nominal damages, as for instance, when the plaintiff employed another agent or neglected to employ one after due notice of the death of the first, and the defendant continued, undoubtedly, solvent for a period sufficiently long to allow the collection of the money due by the exercise of ordinary diligence.  But then the *onus* of showing this lies upon him who seeks to escape the consequences of prior laches, and he ought to show it clearly.  But the case supposed is not this case.  When the first neglect is established, it will not do to turn the plaintiff round upon the allegation that success might have attended a subsequent exercise of stringent diligence, or to hold him to strict proof of the precise moment when insolvency overwhelmed the original defendant.  The recognition of such a rule might, and, in a variety of instances, probably would cause the discomfiture of plaintiffs, without any default in them, resting, as they usually do, in security upon the confidential relations subsisting between counsel and client.

No exception was taken upon the trial to the answer of the court to the defendant's fifth point, and therefore the error assigned here, in this particular, cannot be noticed; and as the cause goes back for another trial, when doubtless the plaintiff will take the opportunity of increasing the amount laid in his narr. as damages, it is unnecessary to consider the first error.

The fourth error was not urged on the argument by the plaintiff in error.  No mistake in the record is perceived but that already pointed out, but for this the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.