386 A.2d 594

**Mary Jane HERMAN, Admrx. of the Estate of William R. Herman, Deceased, Appellant,**

**v.**

**Esther Martin HORST.**

Superior Court of Pennsylvania.

Argued March 24, 1977.

Decided April 28, 1978.

David H. Roland, Reading, with him Balmer, Mogel, Speidel & Roland, Reading, for appellant.

Jay N. Abramowitch, Reading, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order refusing to take off a nonsuit.

A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established. *Watkins v. Sharon Aerie, No. 327 F.O.E.,* 423 Pa. 396, 223 A.2d 742 (1966).
*Ford v. Jeffries,* 474 Pa. 588, 591, 379 A.2d 111, 112 (1977).

Viewed in this light, appellant's evidence was to the following effect. On October 9, 1973, appellant's decedent, William Herman, was driving a Volkswagen stationwagon in the right hand lane in a west-bound direction on Route 422, approximately two miles west of Womelsdorf, in Berks County. In this area Route 422 is a three lane highway, with two lanes marked for west-bound traffic and one for east-bound; the speed limit is 55 m. p. h. Appellee, Esther Horst, was also driving her car in the right hand west-bound lane, at an undetermined distance directly in front of Mr. Herman's car. In the vicinity of a road that intersects Route 422 and leads towards Myerstown, Mr. Herman started turning his car into the center west-bound lane. Appellee, who was looking for signs indicating the turn-off to Myerstown, also started turning her car into the center lane, moving into the path of Mr. Herman's car. She did this without first checking her mirrors and without signaling. In avoiding her, Mr. Horst lost control of his car, swerving first into the east-bound lane, then back into the center, west-bound lane, and finally back into the east-bound lane,

where he struck a van on the southern shoulder of the road. As a result his car was spun around, and he was thrown out and killed.

The lower court acknowledged that on this evidence appellee could be found to have been negligent. *See* The Vehicle Code, Act of Apr. 29, 1959, P.L. 58, § 1012, as amended, Sept. 16, 1961, P.L. 1373, § 4, 75 P.S. 1012(a),[1] which requires that a driver give a visible signal 100 feet in advance of and during a turning movement or lane change. The court held, however, that appellee's negligence was not the proximate cause of the accident.

In *Ford v. Jeffries, supra,* 474 Pa. at 594, 379 A.2d at 114, the Supreme Court discussed the issue of causation as follows:

The terminology of legal cause used in the Restatement of Torts, Second, rather than the more traditional terminology of proximate cause, has been adopted by this Court. *Whitner v. Von Hintz,* 437 Pa. 448, 263 A.2d 889 (1970); *Dollison v. Baltimore and Ohio Railroad Company,* 446 Pa. 96, 284 A.2d 704 (1971); *Majors v. Brodhead Hotel,* 416 Pa. 265, 271, 205 A.2d 873 (1965). Whether the issue is discussed in terms of *proximate cause* or *legal cause* the underlying considerations and the result are the same. Under the older and more traditional approach the issue was whether the defendant's conduct was a proximate cause or a remote cause. Under the Restatement approach the issue is whether the defendant's conduct was, on the one hand, a "substantial factor" or a "substantial cause" or, on the other hand, whether the defendant's conduct was an "insignificant cause" or a "negligible cause." See Section 431, Restatement of Torts, Second. The determination of the issue simply involves the making of a judgment as to whether the defendant's conduct although a cause in the "but for" sense is so insignificant

1. The new Vehicle Code, Act of June 17, 1976, P.L. 162, 75 Pa.C.S. 101 *et seq.,* did not become effective until July 1, 1977, and so is not applicable to this case.

that no ordinary mind would think of it as a cause for which a defendant should be held responsible.

■ In its opinion the lower court states:

It is evident from the testimony in this case that the plaintiff's decedent did not exercise the high degree of care required of a motorist passing at an intersection. He obviously did not have control of his automobile. It was his lack of control that caused him to veer to the left into the eastbound lane and then right into the westbound lane and then left again into the eastbound lane onto the berm of the road where it collided with another vehicle . . The evidence produced by the plaintiff's three witnesses clearly indicates that the plaintiff's decedent lost control of his vehicle. The only evident factor that could have caused him to lose control in the manner in which he did was the speed at which he was operating.

Lower Court Opinion at 4–5.

We are unable to accept this analysis. The only evidence of the speed at which the decedent was operating his car was from appellant's expert witness, who testified that when the car began to skid, it was traveling at a speed of 45 m. p. h., plus or minus an error factor of 7 m. p. h. The lower court acknowledged that "[h]ad the collision occurred in the eastbound lane the first time the plaintiff's decedent swerved into it, we would have a different matter." Lower Court Opinion at 3. In this regard, the expert testified that the decedent's car was "beyond control" at least from the time it began to skid. N.T. 46. It thus appears that the speed of the car, which the lower court considered to be the cause of the lack of control and therefore of the accident, was the same both times the car was in the east-bound lane. Given this testimony, we can find no basis for the lower court's conclusion that the cause of the car being in the east-bound lane the first time was arguably due to appellee's negligence, and yet that the cause of the car being in the east-bound lane the second time was the speed itself. Rather it appears that another "evident factor that could have caused [the decedent] to lose control" was appellee's movement into the center lane. At the least, the question of

whether appellee's negligence was "so insignificant that no ordinary man would think of it as a cause for which a defendant should be responsible" was for the jury's consideration.

The lower court further held that the decedent had been guilty of contributory negligence in that he too did not signal before turning into the center lane.

 In *Smith v. Philadelphia Transportation Co.,* 202 Pa. Super. 278, 281–2, 195 A.2d 168, 170 (1963), quoting *Clee v. Brinks,* 135 Pa.Super. 345, 353, 5 A.2d 387, 391 (1939), this court said: "Just as a negligent defendant cannot be held liable in damages unless his negligence is a cause of the injuries complained of, so too a plaintiff who is negligent is not barred from recovery unless his negligence is a cause of his injury . . . . There is no doubt that a plaintiff's negligence must, at the least, be a causa sine qua non of his injury before he is barred from recovery . . ." Here, appellee said in her deposition that she had not checked her mirrors before turning, and in fact had first become aware of the decedent's Volkswagen as it was passing her car. Therefore, even if the decedent had indicated by a prior signal that he was going to turn, appellee would not have seen that signal before turning her own car into the center lane. The decedent's failure to signal thus appears irrelevant. In any event, this was not "a clear case . . . when reasonable minds would not legitimately differ as to the conclusion of its [contributory negligence] existence: *Aaron v. Stausser,* 360 Pa. 82, 59 A.2d 910 (1948)". *Chicago Express, Inc. v. Robson,* 405 Pa. 207, 210, 174 A.2d 846, 847 (1961), quoting *Shuman v. Nolfi,* 399 Pa. 211, 213, 159 A.2d 716 (1960).

Reversed, and remanded for new trial.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.