418 A.2d 613

**DUKE & COMPANY, a Pennsylvania Corporation, Appellant,**

v.

**Malcolm ANDERSON; Griggs, Moreland, Blair & Anderson, and Anderson, Moreland & Bush, a successor partnership.**

Superior Court of Pennsylvania.

Argued April 10, 1979.

Filed Feb. 13, 1980.

Maurice A. Nernberg, Jr., Pittsburgh, for appellant.

David B. Fawcett, Jr., Pittsburgh, for appellees.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from an order denying a motion to remove a compulsory nonsuit.

A nonsuit is proper only if the jury, after viewing the evidence in the light most favorable to the plaintiff, and then giving the plaintiff the benefit of all reasonable infer-

ences arising from that evidence, could not reasonably conclude that the elements of the cause of action had been established. *Watkins v. Sharon Aerie No. 327 F. O. E.*, 423 Pa. 396, 223 A.2d 742 (1966); *Herman v. Horst*, 255 Pa.Super. 232, 234, 386 A.2d 594, 595 (1978). Viewed in this light, the evidence may be stated as follows:

On February 1, 1971, James Bishop and two others filed a complaint against the Duquesne Brewing Company of Pittsburgh, the company's pension plan and pension board, and Raymond Sigesmund and Franklyn Jeans, who were officers of the company. The complaint alleged in paragraph 20 that "The Retirees are entitled to the death benefits which defendant Duquesne, Pension Plan, Pension Board, Sigesmund and Jeans sought to terminate in that said death benefits were earned as deferred wages by the Retirees during their employment by Duquesne," and in paragraph 30 that "Defendants, Duquesne, Pension Plan, Pension Board, Sigesmund and Jeans have been unjustly enriched by the acts and deeds herein set forth."

On February 3, 1971, the Pittsburgh Post–Gazette published an article reporting the lawsuit. The article stated that the plaintiffs claimed that the company, Sigesmund, and Jeans had been " 'unjustly enriched' by withdrawing the death benefits, particularly since that feature of the company's retirement package had been earned by employe contributions." The following day, Sigesmund and Jeans met with Malcolm Anderson, who was counsel for Duquesne Brewing Company. They asked Anderson to file a defamation action against the Post–Gazette. Anderson agreed that he would file "some kind of a notice." Record at 185a. Sigesmund testified that he did not again discuss the matter with Anderson. Record at 127a. Jeans testified that in mid–March he asked Anderson about the matter and Anderson replied that "he was moving forward with it." Record at 187a. In fact, no action had been filed.

In April 1971 the Duquesne Brewing Company terminated its relationship with Anderson, and subsequently turned its files over to new counsel. No file was turned over in the

Post–Gazette matter.[1]  Jeans only learned in March 1972 of Anderson's failure to file a defamation action against the Post–Gazette, when he questioned new counsel about it. Record at 231a.  By then the statute of limitations barred a defamation action.

In June 1974 the Duquesne Brewing Company (by then known as Duke and Company) filed an action in assumpsit against Anderson and his law firm.  The action was tried before a jury, on February 27 and 28, 1978, and the defendants' motion for nonsuit was granted.  On May 23, 1978, the lower court refused Duke's motion to remove the nonsuit, and this appeal followed.

–1–

We have received the benefit of a careful opinion by the lower court, SILVESTRI, J.  In its opinion the court reasoned that although in assumpsit, the action should be treated as sounding in tort, as many jurisdictions treat legal malpractice actions.  Acting on this premise, the court went on to hold that Duke had to show some injury before it could recover any damages.  The court reviewed the evidence and concluded that Duke had failed to show any injury because it had failed to prove that it would have been successful if Anderson had filed a defamation action against the Post–Gazette.

As appellant, Duke argues that the lower court erred in treating its action against Anderson and his law firm as sounding in tort.  In its view, we should hold that where a client testifies that his attorney was specifically engaged to file an action, but failed to do so, the case should go to the jury, for if the jury accepts the client's testimony, it may

1.  Anderson testified that he told new counsel that he had refused "to take [the case]."  Record at 76a.  It would appear that to some extent this testimony favored the plaintiff, as proving Anderson's refusal to start an action, despite his having said he would file "some kind of a notice."  We therefore mention the testimony at this point. We recognize that the testimony might be read as implying that Anderson told Sigesmund or Jeans that he would not start an action. So read, however, it would be against the plaintiff; at this stage of the proceedings, when we are appraising the propriety of the nonsuit, it must therefore be ignored.

find a breach of contract and award at least nominal damages.

As the lower court recognized, some Pennsylvania cases support appellant's argument. In *Cox v. Livingston*, 2 W and S 103 (1841), the plaintiff–client had instructed the defendant–attorney to file suit against a third party. The Supreme Court concluded that the jury should have been instructed that the defendant–attorney had breached his duty to the plaintiff–client and that even if the action against the third party would have been "unavailing," nominal damages could still be recovered. 2 W and S at 107. When the case was retried and reached the Supreme Court again, as *Livingston v. Cox*, 6 Pa. 360 (1847), the Court stated that the action was "in form as well as in substance upon a contract," 6 Pa. 363, and cited Pennsylvania cases for the proposition that where "the violated duty necessarily springs from contract alone, the action is *quasi ex–contractu,* though the gravamen is laid in tortious negligence or breach of duty by positive and express tort," 6 Pa. at 362. In *McWilliams v. Hopkins*, 4 Rawle 382 (1834), the Supreme Court reversed the granting of a nonsuit where an attorney had failed to file an action even though there had been no proof of actual damages. Finally, in *Lichow v. Sowers*, 334 Pa. 353, 6 A.2d 285 (1939), where the claim was that an attorney had negligently failed to file various petitions, the Court stated that the attorney "having accepted a retainer, and having agreed to file certain petitions, he cannot, by a demurrer to the statement of claim, raise the question as to whether [the petitions] would have been effective. It became his duty to file them and to have their merits passed upon by the court." 334 Pa. at 355, 6 A.2d at 286. *Cf. Lawall v. Groman*, 180 Pa. 532, 37 A. 98 (1897) (where attorney was negligent in title search and mortgage holder is deprived of security because there are prior liens on the property, client may sue, notwithstanding he has not yet suffered any damages); *Youngman v. Miller*, 98 Pa. 196 (1881) (if client had instructed attorney to bring two suits, attorney had duty to do so); *Moore v. Juvenal*, 92 Pa. 484

(1880) (as soon as client's claim was barred by statute of limitations, client had right of action against attorney for negligence causing loss); *Miller v. Wilson*, 24 Pa. 114 (1854) (where attorney fails to record mortgages, client has cause of action against attorney, notwithstanding that client has not yet suffered any loss). These cases, however, do not persuade us that the lower court erred in requiring appellant to show actual loss.

Initially it may be noted that the cases are not entirely consistent. In *Livingston*, for example, after the Court treated the action as being in contract, it went on to apply a tort measure of damages. "[I]t is certainly true," the Court said, "that the measure of damages, in a case like the present is the actual loss sustained by the negligence of the attorney." 6 Pa. at 365. Similarly, in *Miller* the Court seemed to suggest that the client could recover on a tort theory of damages; thus the Court stated as "directly in point" a case holding that the client could recover "for all the *probable* loss he was *likely* to sustain from the invalidity of the security." 24 Pa. at 121 (emphasis in original). In *Lichow* the Court only held that the defendant–attorney could not contest the validity of the plaintiff–client's underlying claim by a demurrer; its opinion may be read as having left open the possibility that at trial the defendant–attorney would prevail upon proving that the petition in question would have been without merit.

We do not wish, however, to base our decision on such distinctions, which in a sense beg the question, for they will be found artificial or persuasive depending upon one's opinion of what our decision should be. However the cases are read, it must be agreed, we believe, that they are alike in all involving a situation in which the client has a choice: either to sue the attorney in assumpsit, on the theory that the attorney by failing to follow specific instructions committed a breach of contract; or to sue the attorney in trespass, on the theory that the attorney failed to exercise the standard of care that he was obliged to exercise. The question presented, therefore, is whether the client should be required

to prove actual loss, whichever form of action the client chooses.

It is settled that if the action is in trespass, the client is required to prove actual loss, if the case is to get to the jury. In *Schenkel v. Monheit*, 266 Pa.Super. 396, 405 A.2d 493 (1979), this court set out the three elements of a cause of action for legal malpractice:

"1. The employment of the attorney or other basis for duty;

2. The failure of the attorney to exercise ordinary skill and knowledge; and

3. That such negligence was the proximate cause of damage to the plaintiff."

Slip op. at 3, quoting R. Mallen and V. Levit, *Legal Malpractice* 123 (1977).

In *Williams v. Bashman et al.*, 457 F.Supp. 322 (E.D.Pa. 1978), the court stated: "The orthodox view, and indeed virtually the universal one, is that when a plaintiff alleges that the defendant lawyer negligently provided services to him or her as a plaintiff in the underlying action, he or she must establish by the preponderance of the evidence that he or she would have recovered a judgment in the underlying action in order to be awarded damages in the malpractice action, which are measured by the lost judgment." *Accord, Spering v. Sullivan*, 361 F.Supp. 282 (D.C.Del.1973); *Kilmer v. Carter*, 274 Cal.App.2d 81, 78 Cal.Rptr. 800 (1969); *Freeman v. Rubin*, 318 So.2d 540 (Fla.App.1975); *Trustees of Schools v. Schroeder*, 2 Ill.App.3d 1009, 278 N.E.2d 431 (1971); *Baker v. Beal*, 225 N.W.2d 106 (Iowa 1975); *Wooddy v. Mudd*, 258 Md. 234, 265 A.2d 458 (1970); *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (1970); *Thompson v. Erving's Hatcheries, Inc.*, 186 So.2d 756 (Miss.1966); *Reumping v. Wharton*, 56 Neb. 536, 76 N.W. 1076 (1898); *Zeitlin v. Morrison*, 167 App.Div. 220, 152 N.Y.S. 1000 (1915); *Bryant v. Seagraves*, 270 Or. 16, 526 P.2d 1027 (1974); *Jackson v. Urban, Coolidge, Pennington and Scott*, 516 S.W.2d 948 (Tex.Civ.App.1974); *Hansen v. Wightman*, 14 Wash.App. 781, 538 P.2d 1238 (1975). *Contra, Goldzier v.*

*Poole,* 82 Ill.App. 469 (1899); *Nave v. Baird,* 12 Ind. 318 (1859); *Grayson v. Wilkinson,* 13 Miss. 268 (1845); *Arnold v. Robertson,* 3 Daly 298 (N.Y.1870); *Porter v. Kruegel,* 106 Tex. 29, 155 S.W. 174 (1913).

Applied to the present case, this means that to get its case to the jury, Duke was required to offer evidence that would support a finding by the jury that if Anderson had filed a defamation action against the Post–Gazette, the action would have been successful. The essence of Duke's argument as appellant is that by choosing to sue in assumpsit, it should be able to avoid this requirement.

In our opinion the results of accepting Duke's argument would be unfortunate. A client who could not prove actual loss would nevertheless be able to maintain an action in assumpsit for nominal damages. One probable result would be that an attorney who had agreed to file an action would be hesitant not to file it even though his research had shown that the action was frivolous. *See* A.B.A. Code of Professional Responsibility EC 7–4 ("[A] lawyer is not justified in asserting a position in litigation that is frivolous.") Another probable result would be that a disappointed client would be encouraged to resort to oppressive litigation. Knowing that he could not prove any actual loss, the client would be encouraged nevertheless to claim that there had been a breach of contract, the hope being that to avoid the expense and professional embarrassment of litigation, the attorney would settle for a good deal more than nominal damages.

We are not to be understood as suggesting that attorneys should be protected from being sued for a breach of their professional obligations. Quite to the contrary. A rule of law providing for the award of damages may have a moral or an economic aspect. A rule will have a moral aspect if its purpose is to encourage one to fulfill his obligations by threatening him with the loss of money if he does not. In providing damages for malpractice, the assumption is that an attorney will more likely fulfill his professional obligations to his client if he knows that the failure to do so may result in his having to suffer substantial loss. *See e. g.,*

*Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979). Nothing we say here in any way undermines this assumption. Sometimes, however, a rule will have an economic rather than a moral aspect. This will be so if its purpose is to achieve a fairer distribution of the risk of loss. For example, in providing for damages for injury done by a defective product, the assumption is that the manufacturer may more readily guard against loss than the consumer, and that it is therefore fairer to require the manufacturer to compensate the consumer, by paying damages, even though the manufacturer was not guilty of any negligence. *See* Restatement (Second) of Torts § 402A, Comment c (1965).

As regards either a moral or economic rule, the point of departure–the basis–of the rule is the fact that some loss has actually occurred. Absent any loss, no purpose, either moral or economic, is served by the rule. Here, appellant asks us to approve a rule that by definition assumes that no actual loss has occurred.

It is important at this point to note a distinction. Sometimes a plaintiff will allege actual loss, and attempt to prove it, but fail. In such a case nominal damages are appropriate; indeed, they represent the only verdict possible. *See* Restatement of Contracts, § 328, Comment a (1932). That is not the sort of case contemplated by the rule that appellant urges upon us. As has been discussed, appellant's position is that even though it be determined in advance that no actual loss occurred, still, so long as the action is in assumpsit rather than trespass, the case should go to the jury so that the jury may enter an award of nominal damages.

We can think of no useful purpose that such a rule would serve; indeed, as we have said, in our opinion its results would be unfortunate, as encouraging frivolous or oppressive litigation. We therefore conclude that when it is alleged that an attorney has breached his professional obligations to his client, an essential element of the cause of action, whether the action be denominated in assumpsit or

trespass, is proof of actual loss. *Accord, Sitton v. Clements*, 257 F.Supp. 63 (E.D.Tenn.1966), *aff'd* 385 F.2d 869 (6th Cir. 1967); *Coon v. Ginsberg*, 32 Colo.App. 206, 509 P.2d 1293 (1973).

To some extent, perhaps, this conclusion is at odds with the Pennsylvania cases that we have referred to as supporting appellant. If this be so, it simply reflects the fact that the law changes. Those cases are, most of them, old cases. When they were decided, the law of malpractice had not developed to the point it has reached today. The courts were therefore not required to consider, as we must consider, what would be the purpose of adopting a rule that would create two distinct classes of malpractice actions, each with its own rule of damages, according to whether the action was denominated an action in assumpsit or an action in trespass.

We think it noteworthy that other states confronted by a similar body of nineteenth century law have chosen to unify their legal malpractice cases under an actual loss standard. Thus in Illinois, *Goldzier v. Poole, supra*, the court said, in 1899, that a client suing his attorney for failure to pursue a claim could recover nominal damages because of the attorney's breach of duty, but in *Trustees of Schools v. Schroeder, supra*, the court said, in 1971: "Whenever an attorney disobeys the lawful instructions of his client he is liable for any loss which ensues from such act. Damages will not be presumed, however, and the client bears the burden of proving that damages resulted. This burden involves the task of establishing that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question." 2 Ill.App.3d at 1012–1013, 278 N.E.2d at 433. (Citations omitted). *Compare Thompson v. Erving's Hatcheries, Inc., supra*, with *Grayson v. Wilkinson, supra; Zeitlin v. Morrison, supra*, with *Arnold v. Robertson, supra; Jackson v. Urban, Coolidge, Pennington and Scott, supra*, with *Porter v. Kruegel, supra*.

–2–

It only remains to decide whether appellant proved actual loss, *i. e.*, whether it proved that if Anderson had filed a defamation action against the Post–Gazette, the action would have been successful.

In *Binder v. Triangle Pub., Inc.*, 442 Pa. 319, 275 A.2d 53 (1971), the Supreme Court stated: "[A] newspaper possesses a qualified privilege to make a fair and accurate report of the [judicial] proceedings, and if the article is not published solely for the purpose of causing harm to the person defamed, no responsibility attaches, even though the contents of the article are false or defamatory."

█ Appellant concedes that the Post–Gazette article accurately summarized the complaint. Its primary contention before us is that the article should in addition have referred to the documents attached to the complaint, which according to appellant contradicted the allegation in the complaint that there were employee contributions to the pension plan. However, even if appellant's contention is accepted,[2] appellant could not have prevailed because it did not establish that the article was published solely for the purpose of causing harm. Jeans testified:

Q. Do you have any knowledge of the motives of the Pittsburgh Post–Gazette in publishing the article on February 3rd, 1971?

A. No.

Q. And do you have any knowledge that the article of the Pittsburgh Post–Gazette was published to cause harm to the Duquense [*sic*] Brewing Company or you or Mr. Sigesmund?

A. No.

Affirmed.

---

2. The lower court held that the newspaper was only responsible for accurately reporting the contents of the complaint, "not what the complaint would or should allege." Record at 276a.