## Beerley v. Hamilton

*Martin J. King*, for plaintiff.
*Harry F. Brennan, John P. Penders* and *Frank M. Jakabowski*, for defendant.

WRIGHT, *J.*, November 24, 1980—This action of trespass arises from a motor vehicle accident that occurred on November 8, 1975 around 11:00 p.m. in the northeast section of Philadelphia. Although four vehicles were involved in varying degrees, the facts are relatively uncomplicated.

It appears from the evidence that defendant, George W. Hamilton, was the operator of an automobile proceeding north on Oxford Avenue and defendant, Amos G. Hand, was driving his car west on Pratt Street. The two vehicles collided in the intersection and the Hamilton vehicle then traveled from 148 feet to 168 feet across Oxford Avenue striking the rear of a SEPTA bus standing in the curb lane on the northwest corner of Pratt Street and Oxford Avenue and facing south on Oxford Avenue. It then struck the car of Allen Talley, which was also facing south on Oxford Avenue and standing beside and to the rear of the bus. Plaintiff, Stephen Beerley, was a passenger in the Talley vehicle.

Stephen Beerley has sued Hamilton and Hand. Defendant Hand cross-filed against Hamilton and also filed a complaint joining Allen Talley as an additional defendant. The case was tried before a jury and at the conclusion of the evidence, the court granted defendant Talley's motion for a nonsuit.

The jury after deliberation returned a verdict in favor of plaintiff Beerley against defendant Hamilton alone in the amount of $200,000. The court had

334

submitted an interrogatory to the jury asking them to indicate what amount of the verdict consisted of future lost earnings. The jury responded $50,000. The court being of the opinion that the evidence did not warrant a verdict for future lost earnings, reduced the jury's verdict to $150,000.

Defendant Hamilton has filed a motion for new trial assigning as reasons 21 errors by this court. However, in his supporting brief, only six of the alleged errors are addressed.

Plaintiff Beerley has filed a post-trial motion requesting the court to reinstate the $50,000 awarded for future lost earnings capacity. He also requests the court to add to the jury verdict an amount for damages for delay under Pa.R.C.P. 238.

We address initially the six assignments of error briefed by defendant in support of his motion for new trial.

## I.
### Defendant Hamilton's Post-Trial Motion

Defendant has excepted to the court's instruction to the jury that they must find one or both of defendants negligent and that such negligence was a proximate cause of the accident. It is undisputed that the accident herein occurred at a controlled busy intersection. Also undisputed is the law governing motor vehicles entering such intersections. See Wright v. SEPTA, 239 Pa. Superior Ct. 165, 361 A. 2d 389 (1976); Smith v. United News Co., 413 Pa. 243, 196 A. 2d 302 (1964). It is clear and unequivocal. The jury was charged:

"The duty to proceed at the intersection is subject to the paramount duty of exercising due care and caution as to others who may be in the intersection.

A driver should not proceed if he sees or with reasonable diligence should see, and that's what we mean by effective observation, that such proceeding will probably result in an accident.

"In short, members of the jury, drivers approaching crossings, that is intersections, must be highly vigilant and must maintain such control that on the shortest possible notice they·can stop to avoid an accident."

In the case at bar both defendant Hand and defendant Hamilton were in the intersection. Plaintiff Beerley was a passenger in a stopped vehicle. Obviously no question of his negligence arises. Thus, one or both of defendants were responsible for the accident which doubtlessly caused plaintiff's injuries. That a defendant's conduct (if found by the jury to be negligent) was a substantial factor in causing harm to the plaintiff is normally a jury question, but it may be removed from the jury's consideration where it is clear that reasonable minds could not differ on the issue: Hamil v. Bashline, 481 Pa. 256, 266, 392 A. 2d 1280, 1285 (1978). We find such a situation here.

Defendant Hamilton next contends that the court erred in granting defendant Talley's motion for nonsuit. Again the evidence is undisputed that the car driven by Talley was standing beside a bus in a proper place on the highway. There is absolutely no evidence to lead a jury to conclude that Talley was negligent. In this Commonwealth a nonsuit is proper if the jury viewing all the evidence, and all reasonable inferences arising from it, in a light most favorable to plaintiff could not reasonably conclude that the elements of the cause of action have been met: Herman v. Horst, 255 Pa. Superior ·Ct. 232, 386 A. 2d 594 (1978); Reuther v. Fowler

and Williams, Inc., 255 Pa. Superior Ct. 28, 386 A. 2d 119 (1978); Ford v. Jeffries, 474 Pa. 588, 379 A. 2d 111 (1977).

We see no error here in the granting of the non-suit as the case eminently falls within the above principle of law.

We next address ourselves to defendant's contention that the court committed error in allowing lay witnesses to testify to the speed of defendant Hamilton's automobile. As a general rule the admission or exclusion of evidence is within the sound discretion of the trial court, to be reversed on appeal, only for a clear abuse of discretion: Westerman v. Stout, 232 Pa. Superior Ct. 195, 335 A. 2d 741 (1975). Opinion evidence as to speed is admissible if the witness presents requisite qualifications, viz., an observation of the vehicular movement in question and a recognition of impressions of like vehicular movement in question and a recognition of impressions of like vehicles at relative speeds: Radogna v. Hester, 255 Pa. Superior Ct. 517, 388 A. 2d 1087 (1978). In this case, the question concerning the speed of the automobile was raised on cross-examination of the bus driver by counsel for defendant Hand. Defendant Hamilton did not object and it was only after the answer was given that Hamilton's counsel sought to have the testimony stricken. We denied the motion to strike as being untimely as one may not wait until the answer to a question is given and then if the answer proves harmful seek to have it stricken: James v. Spidle, 446 Pa. 103, 286 A. 2d (1971).

The witness Kollmar was an experienced bus operator and is certainly presumed to have more expertise in judging speed of motor vehicles than the ordinary lay witness.

Defendant Hand, having been called on cross-

examination by plaintiff, was asked the length of time he had been driving a car, if he could judge the speed of cars based upon past experience, the distance he had observed the Hamilton vehicle, whether he had the opportunity to judge the speed of the vehicle and finally the speed of the Hamilton vehicle. None of these questions were objected to by defendant Hamilton.

It is of interest that defendant Hand stated that Hamilton was traveling 55-60 MPH while Kollmar stated only 35 MPH. In view of this one could hardly conclude that defendant Hamilton's exceptions to Kollmar's testimony are well taken, since there were no objections to the testimony of Hand as to Hamilton's speed.

Defendant Hamilton next alleges that the court erred in its charge to the jury concerning future loss of earnings capacity and future pain and suffering.

Defendant Hamilton is well aware that the court's instruction corresponds with the law in regard to future pain and suffering. Our courts, both state and Federal, have uniformly held that "all that is required with us is that there be sufficient evidence from which the jury may fairly derive the conclusion that the chances that the plaintiff will endure further pain and suffering preponderate over those that he will not. Such preponderance denotes probability or likelihood and that is sufficient." Leizerowski v. Eastern Freightways, Inc., 514 F. 2d 487 (3d Cir. 1975); Connolly v. Phila. Trans. Co., 420 Pa. 280, 216 A. 2d 60 (1966); De-Marines v. KLM Royal Dutch Airlines, 433 F. Supp. 1047 (E.D. Pa. 1977). Certainly the expert and lay testimony formed a sound basis for the jury's conclusions.

Respecting future loss of earnings capacity, the record reveals that we agreed with defendant's posi-

tion as we reduced plaintiff's verdict by $50,000, the amount the jury awarded for such loss.

Defendant next alleges that the court erred in permitting plaintiff's cross-examination of defendant Hamilton as to his use or non-use of seat belts.

The testimony of defendant Hamilton indicated that upon colliding with the Hand vehicle he slid across the front seat of his automobile, thus losing control of his car.

Mr. Hamilton was then asked by plaintiff's attorney:

Q. Please explain to the ladies and gentlemen of the jury the kind of seat belts that were in the car.

A. They had seat belts that buckle from the seat and also the shoulder harness.

Q. If you had been wearing either or both of these, you wouldn't have slid across the seat; isn't that correct?

Mr. Brennan (Hamilton's attorney): Objected to.

The Court: Overruled.

A. Probably wouldn't have.

Q. Isn't it also corect that following the initial impact you were unable to grab ahold of your wheel?

A. Yes, that's correct.

The law regarding the use or nonuse of seat belts by drivers or passengers in motor vehicles has caused major concern to our courts. There are few cases in Pennsylvania on this point. The decided cases in this Commonwealth address the issue in the context of elements that go to the mitigation of damages once liability has been established. Accordingly, it has been held proper to refuse to charge that the failure to use a seat belt may be used as evidence of contributory negligence on the issue of damages where there has been no expert testimony

on the question of causation: Parise v. Fehnel, 267 Pa. Superior Ct. 79, 406 A. 2d 345 (1979).

Nationally, in a majority of the jurisdictions, the courts admit the nonuse of the seat belt as evidence of negligence only if causation has been proven: Glover v. Daniels, 310 F. Supp. 750 (N.D. Miss. 1970); Bertsch v. Spears, 20 Ohio App. 2d 137, 252 N.E. 2d 194 (1969); Remington v. Arndt, 28 Conn. Supp. 289, 259 A. 2d 145 (1969). This result obtains for two reasons. First, it has not been definitely established by research that the use of seat belts is of great value. Second, it is being recognized by medical authorities that the use of seat belts may result in injury which may otherwise not have occurred: 16 Am.Jur. Proof of Facts, Seat Belt Accidents §52. The legal position has been found to be equally insupportable. The argument that a person prepare himself against the future possibility of involvement in an accident flies in the face of the established principle of tort law that one need not anticipate the negligence of another: 2 Meyer, Law of Vehicle Negligence in Penna. §23.80.

The rule adopted by the Court of Appeals of New York has been most consistently followed. It holds that the failure to use a seat belt may be considered by the jury only on the issue of damages and not in resolving liability questions, (1) only when competent testimony demonstrates a causal connection between the nonuse of the seat belt and the injuries, and (2) that the question is for the jury: Spier v. Barker, 35 N.Y. 2d 444, 363 N.Y.S. 2d 196, 323 N.E. 2d 164 (1974), followed in Pritts v. Walter Lowry T. Co., 400 F. Supp. 867 (W.D. Pa. 1975). Pritts was not recognized in Vizzini v. Ford Motor Co., 72 F.R.D. 132 (E.D. Pa. 1976), rev'd. 569 F. 2d 754 (3d Cir. 1977). Because Vizzini was a products

liability case the Court of Appeals set aside "the difficult and controversial question, not yet decided by the Pennsylvania courts, of whether and under what circumstances the failure to wear a seat belt may be considered negligence." Bizzini v. Ford Motor Co., supra, at 767.

The courts of the Commonwealth have not determined the law as to the admissibility of the nonuse of seat belts as evidence of negligence. The leading cases in other jurisdictions would hold that such evidence is admissible only after causation has been established and then only on competent testimony.

In spite of the lack of appellate authority in Pennsylvania in this area, we feel that the facts in the case at bar mandate the placing before the jury of *all* the facts that may have caused this accident. No expert witness is necessary to show causation as defendant Hamilton in his own testimony stated that his failure to use his seat belt may have had a causal effect. To keep this important fact from the jury would have been an impediment to justice.

Finally, defendant contends that the jury verdict is excessive. We have closely examined this issue and have fixed a verdict consistent with the evidence. We have struck that portion of the verdict (lost future earnings capacity) which was not in the court's opinion justified. Under Pennsylvania law a trial court may exercise some control over the amount of the verdict, but only when the award of the jury is so excessive as to offend the conscience and judgment of the court: Nelson v. Keefer, 451 F. 2d 289 (3d Cir. 1971); Wright v. Engle, 256 Pa. Superior Ct. 321, 389 A. 2d 1144 (1978). The award as it now stands does not fall within that classification.

We, therefore, dismiss all of defendant Hamilton's exceptions and deny his motion for new trial.

## II.
### Plaintiff's Post-Trial Motions

Plaintiff has excepted to the action of the court in reducing the jury verdict $50,000 (from $200,000 to $150,000), the amount awarded by the jury for diminished earnings capacity.

An examination of the trial record fails to reveal any evidence from which a jury could reasonably find a loss by plaintiff of future earnings capacity. It is true that plaintiff suffered a permanent injury and that there was testimony as to the employment background and plaintiff's life expectancy. Still, there was no evidence introduced to show that plaintiff's earnings power had in fact been impaired. The measure of impaired earnings power is the loss which the evidence shows will result from the injuries. Proof of age, health habits and life expectancy of the injured party standing alone do not afford a sufficient basis upon which to rest a verdict for diminished earnings capacity: DeMarines v. KLM Royal Dutch Airlines, 433 F. Supp. 1047 (E.D. Pa. 1977); Gregory v. South Hill Movers, Inc., 477 F. Supp. 484 (W.D. Pa. 1979); Griffith v. Wheeling Pittsburgh Steel Corp., 452 F. Supp. 841 (W.D. Pa. 1978).

Diminished earnings capacity is a separate and distinct item of damages. Plaintiff has already received damages for permanent leg length shortening, displacement of the hip and other injuries. He cannot receive them again in the form of diminished earnings capacity.

Plaintiff next contends that the jury verdict should have been molded to add $15,000, the

maximum work loss benefit under the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.202(b)(2). Suffice it to say that since the court disallowed any future earnings loss, this contention of plaintiff is wholly without merit.

Finally, plaintiff asks for ten percent interest as damages for delay under Pa.R.C.P. 238.* Plaintiff states the period of said interest to be from October 15, 1979 to date of verdict, May 14, 1980, on the amount of $150,000. We calculate this interest to be $8,750. Accordingly, we are adding this to the verdict of $150,000, for a total of $158,750. It should be noted that defendant Hamilton has offered no defense in either his argument or his brief to this last contention of plaintiff.

---

*"Rule 238. Award of Damages for Delay in an Action for Bodily Injury, Death or Property Damage.

"(a) . . . the court . . . shall

"(1) add to the amount of compensatory damages in the . . . verdict of a jury . . . damages for delay at ten (10) percent per annum not compounded, which shall become part of the . . . verdict. . . .

"(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the . . . verdict. . . .

"(e) if a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by . . . verdict, . . . exclusive of damages for delay, more than 125 percent of the offer, the court . . . shall not award damages . . . for the period after the date the offer was made.

"(f) if an action is pending on the effective date of this rule, or if an action is brought after the effective date on a cause of action which accrued prior to the effective date, damages for delay shall be computed from the date plaintiff files the initial complaint or from a date one year after the accrual of the cause of action, or from a date six (6) months after the effective date of this rule, whichever date is later."